2022 IL App (1st) 210811

No. 1-21-0811

Opinion filed September 30, 2022

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Plaintiff-Appellee, | ) | |
| | ) | No. 99 CR 14734 (01) |
| v. | ) | |
| | ) | The Honorable |
| BYIA BRUCE, | ) | William G. Gamboney, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

_____

JUSTICE WALKER delivered the judgment of the court, with opinion.
Justice Pucinski concurred in the judgment and opinion.
Justice Coghlan dissented, with opinion.

OPINION

¶ 1    Following a 2003 jury trial, defendant-appellant, Byia Bruce was found guilty of two counts of first degree murder on the theory of accountability and sentenced to natural life in prison. This court affirmed Bruce's conviction and sentence in 2006. In 2014, Bruce, who was a minor at the time of his original sentence, filed a *pro se* postconviction petition challenging the constitutionality of his sentence pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012). The petition advanced to the second stage, and the State agreed Bruce was entitled to a new sentencing hearing.

At the new sentencing hearing, the parties agreed to a 23-year sentence, but Judge Gamboney, the resentencing judge, rejected the agreement and imposed a 28-year sentence. Subsequently, the resentencing judge denied Bruce's motion to reconsider, and now Bruce appeals. On appeal, Bruce argues the resentencing judge abused his discretion when he rejected the parties' 23-year prison term agreement and instead sentenced Bruce to 28 years. We find that the resentencing judge abused his discretion in resentencing Bruce. We reverse the judgment, and the sentence is modified.

¶ 2                                I. BACKGROUND

¶ 3      On May 26, 1999, Bruce was arrested for the murders of Robert Anderson and George Watkins. While at the station, Bruce provided a written statement admitting his involvement in the shootings. Bruce filed a pretrial motion to suppress his written statement. The motion alleged that, due to Bruce's psychological state and intellectual capacity, he could not appreciate the meaning of his *Miranda* rights and that his signed statement was the result of coercion. See *Miranda v. Arizona*, 684 U.S. 436 (1966).

¶ 4      At the suppression hearing, Detective James O'Brien testified that he investigated the murder of Anderson and Watkins, that Bruce was given *Miranda* warnings before each interrogation, and that Bruce understood his rights and waived them.

¶ 5      Juana Quinoses, Bruce's teacher at Ada S. McKinley, a school for children with learning disabilities and behavior disorders, testified that Bruce was transferred to McKinley after being referred by the board of education. Quinoses stated that she evaluated Bruce on March 16, 2002, and determined Bruce had a second-grade reading level.

¶ 6    Dr. Antoinette Kavanaugh, a psychologist and clinical director of the juvenile justice division of Northwestern Law School, testified that she interviewed Bruce for 10 hours. Dr. Kavanaugh indicated that Bruce's cognitive abilities were borderline, he had verbal deficiencies, and he read at a second-grade level. She also determined that it was unlikely that Bruce was able to understand his *Miranda* rights when he gave his statement.

¶ 7    Dr. Stafford Henry, a psychiatrist for Forensic Clinical Services, testified he interviewed Bruce on May 2, 2002. Dr. Henry stated he asked Bruce to read the *Miranda* rights aloud, and Bruce initially had difficulty reading. He reminded Bruce the terms of the evaluation, and Bruce was able to read them fluently. Bruce explained to Dr. Henry that he was able to read the *Miranda* rights because he had been practicing in prison. Dr. Henry concluded that, in his opinion, Bruce was exaggerating any cognitive deficiencies and was able to waive his *Miranda* rights knowingly and intelligently. The trial court found waiver was not coerced and was voluntary, and it denied the motion to suppress.

¶ 8    The following facts were established during a jury trial. In June 1998, 25-year-old Antoine Winston told 16-year-old Bruce, 17-year-old Martez Cole, and 22-year-old James Seals that he wanted to kill Anderson because Anderson "pistol-whipped" him. On June 26, 1998, Winston learned that Anderson was at a nearby liquor store. Winston instructed Cole to get a gun and hide it under the cushion of Seals's wheelchair. The group headed to the liquor store, with Bruce pushing Seals in the wheelchair. When they reached the liquor store, Bruce ran away. Cole handed Winston the weapon while holding the door open, and Winston shot and killed Anderson and Watkins.

¶ 9 A jury found Bruce guilty on the theory of accountability, and the trial court sentenced him to a term of natural life in prison under section 5-8-1 of the Unified Code of Corrections (730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 1998)). Bruce's counsel argued that a mandatory life sentence would be unconstitutional under *People v. Miller*, 202 Ill. 2d 328 (2002) (*Leon Miller*). The court found that *Leon Miller* was distinguishable because Bruce took an active role in the planning and commission of the murders.

¶ 10 Bruce appealed his conviction, arguing *inter alia* that his sentence violated the proportionate penalties clause of the Illinois Constitution, and raised several trial errors. This court found that the trial court did not abuse its discretion in sentencing and affirmed his conviction and sentence. *People v. Bruce*, No. 1-04-0266(2006) (unpublished order under Illinois Supreme Court Rule 23).

¶ 11 On June 18, 2013, Bruce filed a *pro se* postconviction petition arguing that his sentence was unconstitutional under *Miller*, 567 U.S. 460. His petition advanced to the second stage of proceedings. On February 21, 2018, the State agreed that he was entitled to a new sentencing hearing.

¶ 12 At the resentencing hearing, Aleisha Flanagan, a correctional counselor for the Department of Corrections, testified that she had known Bruce for roughly five years. Flanagan stated she never had an issue with Bruce and he was "very respectful." She explained that Bruce was a cell house worker who helped other officers and he was a "model inmate."

¶ 13 Terrence West, a former Department of Corrections lieutenant, testified that he interacted with Bruce daily for seven years. West indicated Bruce was someone he could rely on as a cell

house worker, and he never had any issues with him. West also stated that Bruce could be an asset to the community.

¶ 14    Dr. Robert Hanlon, a professor of psychiatry and neurology at Northwestern University Feinberg School of Medicine, testified about evaluations he performed on Bruce in August 2019. Dr. Hanlon found that Bruce had an IQ of 76, an unspecified bipolar disorder, and dyslexia. Dr. Hanlon also concluded that Bruce scored very low on a checklist for pathology and showed no evidence of symptom exaggeration or malingering.

¶ 15    Bruce's sister, Arika Bruce, testified about their family history. Arika described their living conditions as "really poor," and they hardly had any food. She explained that their mother provided minimal supervision and their older sister cared for them. Arika and Bruce had a good relationship with their father, but he abandoned them when Bruce was eight years old. Bruce's mother eventually found a new boyfriend, Tyrone, whom Arika described as a "crackhead." Bruce would occasionally fight with Tyrone until Bruce eventually went to live with his girlfriend at age 16.

¶ 16    In closing, the prosecutor stated:

> "As the individual who tried this case the first time, litigated the motions, tried all three defendants, I did have a discussion with the defense, my partner, and I made an offer of 23 years, which was not accepted by the Court. So, at this point I'm not going to ask this Court for any time different from that. I don't think that that would be appropriate for me to do. Nor am I going to ask for a sentence *per se*. I would just ask the Court to do what you think is appropriate as far as justice."

¶ 17    In response, defense counsel emphasized that Bruce grew up in poverty with hardly any supervision. Counsel also noted that Bruce was the youngest person involved in the offense and

cited the testimonies of Flanagan and West as evidence of rehabilitation. In allocution, Bruce expressed his regret, apologized to the victims' families, and asked for a chance to show that he could live a different life.

¶ 18    After hearing from the parties, the resentencing judge acknowledged Bruce's mental capacity as a juvenile:

"Dr. Hanlon spoke about the development of the juvenile brain and how it differs from a fully developed brain of an adult, making him more subject or people who are juveniles to impulsive behavior, subject to external influences, doing irresponsible things. I consider his mental situation, an IQ of 76, a form of bipolar suffering from depression. I consider in mitigation his background or actually his lack of background that he has no, as far as I'm made aware, no contact or no prior arrests either as a juvenile or as an adult."

¶ 19    The resentencing judge acknowledged the letters of support and that Bruce appeared to be a "model prisoner." The judge also commented on Bruce's remorse:

"I'm told by Dr. Hanlon that Mr. Bruce denied involvement in the crimes for which he was convicted. I mean, he told me he has accepted the jury's verdict, but I don't take that as being remorse. Remorse is when someone accepts responsibility and admits what they did was wrong. He tells me about things, or I'm told things about Mr. Bruce that he recognizes he made mistakes but not apparently in this particular case."

¶ 20    The resentencing judge emphasized that Bruce was found responsible for the death of two men and that he "knew what was going on probably a couple days before. He was told about a plan. He willingly participated in the plan." The court concluded by addressing the parties directly:

> "I don't know if it's any consolation to you, but this presented a very difficult case for me, and I hope that—you seem to have taken the—taken things on the bright side for someone who was sentenced to natural life in prison without parole. To be able to accomplish all you did while you were in prison tells me a lot about your character, so I hope the next whatever period of time goes by quick for you. You've got family that cares about you, and you'll still be a young man when you get out and I hope you do that soon and the time passes by quickly for you and that you make something of yourself."

¶ 21    The resentencing judge sentenced Bruce to 28 years in prison. Bruce subsequently filed a motion to reconsider that was denied. Bruce now appeals.

¶ 22                                    II. ANALYSIS

¶ 23    On appeal, Bruce argues that the sentencing court abused its discretion at his *Miller* resentencing hearing when it refused to accept the parties' agreed-upon sentence of 23 years and sentenced Bruce to 28 years.

¶ 24    The Illinois Constitution requires that penalties be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11; *People v. Center*, 198 Ill. App. 3d 1025, 1032-33 (1990). The trial court has broad discretionary powers in imposing a sentence. *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). A sentencing determination will not be disturbed absent an abuse of discretion. *Id.*

Sentences that fall within the permissible statutory range may be an abuse of discretion where they are "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *Id.* at 210. An excessive sentence entails a sentence within the statutory range but disregards a defendant's rehabilitative potential. *People v. Daly*, 2014 IL App (4th) 140624, ¶ 25 (citing *People v. Perruquet*, 68 Ill. 2d 149, 154-55 (1977)).

¶ 25    In *Miller*, the Supreme Court held that the eighth amendment precluded a mandatory life sentence without parole for a juvenile offender who has committed homicide. The Court later held that *Miller* applied retroactively in *Montgomery v. Louisiana*, 577 U.S. 190, ___, ___, 136 S. Ct. 718, 732, 736 (2016). In *People v. Holman*, 2017 IL 120655, ¶ 38, our supreme court ruled that life sentences imposed on juvenile offenders, mandatory or discretionary, are disproportionate and violate the eighth amendment, unless the sentencing court considers youth and its attendant characteristics. In *People v. Buffer*, 2019 IL 122327, ¶¶ 40-41, our supreme court held that a prison term over 40 years imposed on a juvenile constitutes a *de facto* life sentence and violates the eighth amendment. To prevail on a claim that a juvenile's life sentence violated the eighth amendment, a defendant must show both that (1) he was "subject to a life sentence, mandatory or discretionary, natural, or *de facto*," and (2) "the sentencing court failed to consider youth and its attendant characteristics." *Id.* ¶ 27. Post-*Miller*, our legislature enacted legislation requiring the trial court to consider *Miller* factors, including:

> "(1) the person's age, impetuosity, and level of maturity at the time of the
> offense, including the ability to consider risks and consequences of behavior, and
> the presence of cognitive or developmental disability, or both, if any;

(2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;

(3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;

(4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2018).

¶ 26    Here, after reviewing the relevant sentencing factors, Judge Gamboney sentenced Bruce to 28 years. Bruce argues the resentencing judge abused his discretion at sentencing by rejecting the agreed-upon sentence of 23 years and not properly considering mitigating and aggravating factors. Specifically, he argues the judge did not properly consider his (1) cognitive or developmental disability, (2) degree of participation in the offense, (3) prospect for rehabilitation, (4) remorse for

his involvement in the offense, and (5) social background and family history of trauma. In determining whether the sentencing court considered any improper factors, this court must consider the entire record, rather than "a few words or statements" made by the trial court. *People v. Ward*, 113 Ill. 2d 516, 526 (1986).

¶ 27    This court's analysis in *People v. McKinley*, 2020 IL App (1st) 191907, is instructive. In *McKinley*, the defendant shot and killed a man at the behest of his friend when he was 16 and was sentenced to 100 years in prison. *Id.* After a failed direct appeal and postconviction proceeding, the Seventh Circuit ruled with instructions to the district court to stay the habeas proceedings and allow the defendant to pursue resentencing. *McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016). Defendant filed for postconviction relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)), which was granted.

¶ 28    During resentencing, an expert in the field of developmental psychology testified to defendant's mental capacity and susceptibility to outside influences. Correctional officers testified to defendant's conduct as a cell house worker and stated that there were never issues with the defendant. Two professors testified about defendant's outstanding performance in prison education programs.

¶ 29    On appeal, this court found that the sentencing court abused its discretion by sentencing the defendant to 39 years in prison. The court reasoned that the sentencing court disregarded evidence of the defendant's extensive rehabilitation and improperly considered certain sentencing factors. The court also added that simply hearing evidence on all of the *Miller* factors does not mean there was no abuse of discretion. *McKinley*, 2020 IL App (1st) 191907, ¶ 86. This court

reduced defendant's sentence to 25 years in prison, followed by 3 years of mandatory supervised release. *Id.* ¶ 91.

¶ 30     Like the defendant in *McKinley*, evidence of Bruce's rehabilitation was substantial. Based on Bruce's behavior while incarcerated, he made significant gains in psychosocial maturity and toward rehabilitation. Two correctional officers testified that there were never any issues while in prison. Furthermore, the officers explained that being selected as a cell house worker was a privilege and that Bruce performed his duties so well that fellow correctional officers frequently requested Bruce's assistance because Bruce was a "model inmate." Equally as important, Lieutenant West testified that "Bruce could be an asset to the community."

¶ 31     Regarding Bruce's role in the offense, the resentencing judge commented on his participation:

> "The record makes clear to me that Mr. Bruce knew what was going on probably a couple days before. He was told about a plan. He willingly participated in the plan. I'm not sure whatever that two-and-a-half-block or three-block or two-block walk that he pushed the wheelchair, how long that took. It had to take a little bit of time. I wonder what was going on in his mind that walk knowing what was about to happen."

¶ 32     The dissent would find Bruce was made aware of a plan days before the murder, but a preconceived plan, scheme, or design is one that is "thought out well in advance of the crime." *People v. Williams*, 193 Ill. 2d 1, 31 (2000). Winston's singular statement that he wanted to kill Anderson does not constitute a preconceived plan. The record demonstrates no plan to murder days before the shooting. It was not until the day of the offense that Bruce was told to push the

wheelchair. He was the youngest person in the group and helped push the person in the wheelchair who hid the weapon. Bruce did not hand Winston the weapon nor hold the door open so Winston could shoot the victims. Bruce ran away after pushing Seals to the scene of the shooting. While we recognize Bruce's role in the offense, the resentencing judge did not properly consider Bruce's participation. What is paramount here is that, unlike the defendant in *McKinley*, Bruce was not the shooter. Furthermore, Bruce's demonstrated rehabilitation as an adult confirms that, as a minor, he was simply susceptible to the negative influence of the adults. Unlike the issue of sentencing immediately after trial, where the trial court considers potential for rehabilitation, here, the issue before the resentencing judge involved Bruce's demonstrated rehabilitation.

¶ 33    We also find that the resentencing judge improperly found that Bruce lacked remorse for his actions. At the end of the resentencing hearing, Bruce stated:

> "I want to say sorry to the victims' family. I know it's painful to have to go through this again. I come to accept the decision the juries have gave me but since I been locked up, I have worked on my emotions. I have done jobs, not only school, working on getting my GED."

¶ 34    The resentencing judge did not find Bruce's apology evidence of remorse. When considering remorse, "the attitude of the defendant in this regard must be evaluated in light of all the other information the court has about the defendant, and in light of all the other facts of the case in determining what relevant meaning the defendant's attitude displays with respect to his prospect for rehabilitation and restoration to a useful place in society." *Ward*, 113 Ill. 2d at 529. Bruce was found guilty based on accountability. He was a minor, did not plan the murders, was not present when the shooting occurred, and was the youngest person involved. Nevertheless,

Bruce expressed regret and apologized to the victims' families. We find that Bruce demonstrated remorse for his actions even though the resentencing judge improperly used his apology in aggravation.

¶ 35    The Illinois Constitution of 1970, article 1, section 11, requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "A sentencing court must not only consider rehabilitative factors in imposing a sentence, [but] it must also make rehabilitation an objective of the sentence." *People v. Wendt*, 163 Ill. 2d 346, 352-53 (1994). Rehabilitative potential considers "[t]he nature and circumstances of the offense and the history and character of the defendant." *People v. Gibbs*, 49 Ill. App. 3d 644, 649 (1977). Here, Bruce was not the shooter, was only 16 years old at the time of the offense, and had no criminal history. He had been diagnosed with having an IQ of 76 and was subjected to pressure from a 25-year-old man. Bruce also had "really poor" living conditions, minimal parental supervision, did not plan the offense, and expressed remorse. The resentencing judge failed to view Bruce's participation through the lens of a 16-year-old child, and also failed to consider Bruce's demonstration rehabilitation.

¶ 36    When the trial court abuses its discretion, this court must reverse the sentence the trial court imposed. *People v. Snyder*, 2011 IL 111382, ¶ 36. Here, the sentencing court imposed a sentence that is greatly at variance with the spirit and purpose of the law and manifestly disproportionate to the nature of the offense. *Stacey*, 193 Ill. 2d at 210. The dissent states that "[t]he majority's conclusion amounts to an improper reweighing of the sentencing factors with complete disregard for the findings of the trial court." *Infra* ¶ 49. As our supreme court has stated in *Stacey*, "we are not reweighing any aggravating or mitigating factors." 193 Ill. 2d at 210. The prosecution agreed

with defense counsel about the appropriate sentence and the sentencing court should apply the considerations that arise when the prosecution and the defense reach a plea agreement for a specific sentencing recommendation. "Just because a court may reject a proposed plea agreement [citation], it does not follow that a court may reject one for any reason at all. The court must use sound judicial discretion." (Internal quotation marks omitted.) *People v. Allen*, 351 Ill. App. 3d 599, 604 (2004).

¶ 37 As this court stated in *People v. Ferguson*, 46 Ill. App. 3d 732 (1977):

" 'The judge may withhold approval if [the judge] finds that the prosecutor has failed to give consideration to factors that must be given consideration in the public interest, factors such as the deterrent aspects of the criminal law. However, trial judges are not free to withhold approval of guilty pleas on this basis merely because their conception of the public interest differs from that of the prosecuting attorney. The question is not what the judge would do if he were the prosecuting attorney, but whether he can say that the action of the prosecuting attorney is such a departure from sound prosecutorial principle as to make it an abuse of prosecutorial discretion.' " *Ferguson*, 46 Ill. App. 3d at 733-34 (quoting *United States v. Ammidown*, 497 F.2d 615, 622 (D.C. Cir. 1973)).

¶ 38 Here, the prosecutor recommended a sentence of 23 years in prison after considering the extensive mitigating circumstances. Bruce grew up in deep poverty, often with hardly any food. An older sister tried to raise Bruce because his parents had little involvement in his life, leaving him especially susceptible to pernicious influences. Bruce had extremely limited involvement with this crime and was the youngest person involved. He was 16 years old and with limited intelligence

and took no part in the decisions that led to the crime. Viewing the evidence in the light most favorable to the judge's sentencing decision, the sentence was unreasonable. The dissent finds our reliance on *McKinley*, 2020 IL App (1st) 191907, inapposite. The dissent fails to recognize that, in *McKinley*, the petitioner was the triggerman, while here, Bruce was not the triggerman and never possessed a gun. We again note that in this case there is evidence that Bruce had no criminal background—not even an arrest. In light of the evidence, the prosecutor found that further incarceration of Bruce serves no useful purpose. The resentencing judge abused his discretion when he ruled otherwise.

¶ 39     Based on the foregoing, we hold the resentencing court abused its discretion by rejecting the agreed-upon sentence of 23 years, disregarding evidence of Bruce's demonstrated rehabilitation, and failing to properly consider mitigating and aggravating factors.

¶ 40     Bruce asks this court to reduce his sentence to the 23-year agreement with the State under Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967). Pursuant to Rule 615(b)(4), a reviewing court may "reduce the punishment imposed by the trial court." Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967). Depending on the circumstances of the case, we can impose a new sentence or remand the matter for resentencing. *People v. Jones*, 168 Ill. 2d 367, 378 (1995). Here, we find it appropriate to impose a new sentence rather than exhaust additional judicial resources that would be expended by ordering a new sentencing hearing. *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986); *People v. O'Neal*, 125 Ill. 2d 291, 300 (1988).

¶ 41                              III. CONCLUSION

¶ 42     Considering the nature of this case and the resentencing judge's analysis of mitigating and aggravating factors, Bruce's sentence demonstrates great variance with the spirit and purpose of

the law. Bruce was a 16-year-old child and found guilty based on accountability. His sentence was disproportionate to the nature of the offense. Accordingly, we invoke our authority under Rule 615(b)(4) and reduce Bruce's sentence to the previously agreed-upon term of 23 years, followed by 3 years of mandatory supervised release.

¶ 43   Sentence modified.

¶ 44   JUSTICE COGHLAN, dissenting:

¶ 45   Although the trial court comprehensively and deliberately considered the statutory sentencing factors in aggravation and mitigation and the required *Miller* factors before imposing a sentence on the low end of the statutory sentencing scheme, the majority concludes that the trial court abused its discretion in sentencing defendant. I respectfully disagree with this conclusion.

¶ 46   It is well established that a trial court's sentencing decision is entitled to great deference and should not be disturbed absent an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). That is because the trial court, rather than a reviewing court relying on a cold record, "is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. A reviewing court must not substitute its judgment for that of the sentencing court just because it would have weighed the applicable sentencing factors differently. *People v. Alexander*, 239 Ill. 2d 205, 213 (2010).

¶ 47   It is presumed that the trial court considered all appropriate sentencing factors and evidence in mitigation unless there is an affirmative showing to the contrary. *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27. "The trial court has no obligation to recite and assign value to each factor presented at a sentencing hearing." *People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011). A

defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense. *Alexander*, 239 Ill. 2d at 214. The existence of mitigating factors does not require a sentence close to the minimum sentence, even if no aggravating factors are present. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010); *People v. Cook*, 279 Ill. App. 3d 718, 727 (1995).

¶ 48 Here, before imposing a 28-year sentence for first degree murder, the trial court thoughtfully recited its findings for the applicable aggravating factors pursuant to 730 ILCS 5/5-5-3.2(a), mitigating factors pursuant to 730 ILCS 5/5-5-3.1(a), and *Miller* factors for sentencing an individual under the age of 18 pursuant to 730 ILCS 5/5-4.5-105. Nothing in the court's pronouncement shows an improper application of these factors.

¶ 49 The majority's conclusion amounts to an improper reweighing of the sentencing factors with complete disregard for the findings of the trial court. First, it rejects the trial court's finding that defendant "knew what was going on probably a couple days before." Defendant admitted in his handwritten statement that, a few days before the murder, he heard Antoine Winston tell Martez Cole that he was going to kill Robert Anderson for "pistol whipping" him. On the day of the murder, Winston approached a group that included defendant and told them that Anderson was at the nearby liquor store and instructed Cole to get a gun, setting the plan in motion. The record reflects that defendant knew Winston was planning to kill Anderson days before the shooting occurred.

¶ 50 Second, the majority criticizes the trial court's finding that defendant's statement in allocution was not evidence of remorse. While defendant stated, "I want to say sorry to the victims' family," defendant did not take responsibility for, or even acknowledge, his role in the murders. Instead, as the trial court noted, defendant simply stated that he had "come to accept the decision

the juries have gave [*sic*] me." Further, Dr. Hanlon testified that even during his August 2019 evaluation, defendant continued to deny his involvement in the murders. The trial court was in a better position to make the determination of defendant's lack remorse based on its observations of the proceedings and defendant's demeanor, rather than the cold record before us.

¶ 51    I find the majority's reliance on *People v. McKinley*, 2020 IL App (1st) 191907, inapposite. In *McKinley*, we found "that the trial court abused its discretion by disregarding evidence of defendant's extensive rehabilitation and improperly considering certain sentencing factors during the resentencing hearing." ¶ 91. Specifically, the trial court "gave improper weight to the need to deter future criminal conduct," considered peer pressure as an aggravating factor, and "improperly considered defendant's age as it applied to his offense." *Id.*   ¶¶ 87-90.

¶ 52    The trial court in this case did not improperly consider any sentencing factors during the resentencing hearing. In fact, unlike in *McKinley*, the trial court in this case did more than just hear evidence pertaining to the *Miller* factors: it explicitly recited the factors and its accompanying findings for each. *Id.* ¶ 52. This includes findings that defendant's age "would mitigate it," that "he was influenced by the suggestions made by the shooter in the case and other people who were around," that "there was certainly parental neglect, certainly childhood trauma, certainly a lot of problems in his home environment, educational, and social background," that he had an IQ of 76, was not the shooter, and had no prior criminal history. The court expressly "considered the pre-sentence investigation report, the evidence presented, statement in allocution, arguments of counsel, all statutory and nonstatutory factors in aggravation and mitigation, *whether specifically mentioned or not*, and the history and character of the defendant." (Emphasis added.) The trial court also recognized Dr. Hanlon's testimony regarding the general characteristics of juveniles and

the adolescent brain. There is simply nothing in the record to refute the presumption that the trial court considered all appropriate sentencing factors and evidence in mitigation.

¶ 53    The record does not support the majority's finding that the trial court disregarded evidence of defendant's rehabilitation. On the contrary, the record reflects that the court thoroughly considered defendant's rehabilitation efforts.

¶ 54    At the resentencing hearing, the trial court heard testimony from former Illinois Department of Corrections officers Aleisha Flanagan and Terrance West about defendant's time in prison from 2012 to 2019. Before imposing its sentence, the trial court stated, "I consider in mitigation his behavior at the jail and the Illinois Department of Corrections. *** The testimony of the two correctional officers I believe is mitigating for Mr. Bruce. He appears to be, from all I have is what the one witness testified to that he's a model prisoner." Ultimately, the trial court concluded "Sounds like he's [a] pretty good candidate to be rehabilitated." The record demonstrates that the trial court adequately considered the defendant's rehabilitative potential amid the other applicable sentencing factors.

¶ 55    Although Supreme Court Rule 615(b)(4) grants a reviewing court the power to reduce a sentence, "that power *** should be exercised 'cautiously and sparingly.' " *Alexander*, 239 Ill. 2d at 212 (quoting *People v. Jones*, 168 Ill. 2d 367, 378 (1995)). In *Alexander*, the appellate court found that the trial court "failed to give due consideration to [the defendant's] social background and facts evidencing his rehabilitative potential, including the improvement in his conduct while in detention." *Alexander*, 239 Ill. 2d at 214. In reversing the appellate court and reinstating the sentence imposed by the trial court, our supreme court found that the appellate court erroneously "substituted its own judgment for that of the trial court because it would have weighed the factors

differently—an improper exercise of the powers of a reviewing court." *Id.* at 214-15. Similarly, in the instant case, the majority is erroneously substituting its judgment for that of the trial court by concluding that the trial court "failed to consider Bruce's demonstrated rehabilitation."

¶ 56 The trial court properly considered all factors in aggravation and mitigation, including defendant's youth and its attendant characteristics under *Miller*, before imposing a sentence that was on the low end of the statutory sentencing scheme. There is no reason to reweigh these factors here where the court did not abuse its discretion.

¶ 57 Accordingly, I respectfully dissent from the majority opinion and would affirm the 28-year sentence imposed by the trial court.

---

### *People v. Bruce*, 2022 IL App (1st) 210811

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 99-CR-14734(01); the Hon. William G. Gamboney, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Carolyn R. Klarquist, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Douglas P. Harvath, Tasha-Marie Kelly, and Julie Riekse, Assistant State's Attorneys, of counsel), for appellee. |

---