NOTICE

Decision filed 07/08/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230619-U

NO. 5-23-0619

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 18-CF-1712 |
| | ) | |
| RAHIAM A. SHABAZZ, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction and sentence are affirmed where his sentence was not excessive when the trial court sentenced defendant within the respective statutory sentencing ranges for the offense charged, the court considered all relevant factors in mitigation and aggravation, and the court considered defendant's youth.

¶ 2    Following a Macon County jury trial, defendant, Rahiam A. Shabazz, was convicted of four counts of home invasion (720 ILCS 5/19-6(a)(3) (West 2022)), two counts of armed robbery (*id.* § 18-2(a)(2)), and one count of aggravated battery (*id.* § 12-3.05(f)(1)). Defendant was 18 years and 8 months old at the time of the offenses. The trial court sentenced him to concurrent 39-year terms of imprisonment for the counts of home invasion and armed robbery, and a concurrent 5-year term for the single count of aggravated battery. Defendant appeals, arguing that his sentence was excessive where the trial court failed to adequately consider his youth and rehabilitative

1

potential as mitigating factors and should not have considered deterrence as a factor in aggravation. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                              I. BACKGROUND

¶ 4     The underlying incident involved defendant and three accomplices committing a series of home invasions while armed with pistols. In addition to the testimony discussed below, the State also presented evidence of the same group's involvement in two similar incidents that occurred at two other homes a few hours prior to the events at issue here.

¶ 5     At trial, the State presented testimony from two of the victims, who stated that four unknown men wearing masks and dark clothing knocked on the door of their house, and two of them pulled out guns. The victim who answered the door had a gun pointed at his head, and the other victim was struck on the head with a gun when he tackled one of the home invaders. When the latter victim was on the floor, the assailants beat him with their weapons and stomped on him. They repeatedly asked where the money and weapons were hidden, and when they were told there were none, they continued beating the witness. He sustained various cuts and bruises, as well as a fractured hand.

¶ 6     The first witness was then taken to the bedroom at gunpoint and forced to lie face-down on the bed with his hands behind his head and his eyes shut. He told the assailants where money and guns could be found in the house and in his car. According to the victims' testimony, the four then ransacked the house, and woke up a six-year-old family member who was asleep in his bedroom at the time. One of the assailants brought the child into the living room, stuck a gun down his throat, and threatened to kill him if they were not told where everything was. An assailant eventually threw the child onto the floor. One of the witnesses testified that the four men took five guns, ammunition, a few bills, and approximately $1,800.

2

¶ 7    Following deliberation, the jury found defendant guilty of four counts of home invasion, two counts of armed robbery, one count of armed violence, and one count of aggravated battery. The jury found him not guilty of the remaining count of aggravated battery. Posttrial, the State conceded that the jury's finding of guilt on the count of armed violence was in error, as it was it was predicated on the aggravated battery charge of which defendant was acquitted. The trial court vacated the finding of guilt on that count.

¶ 8    The trial court ordered the preparation of a presentence investigation report (PSI). The report included defendant's four prior juvenile offenses, which were as follows: (1) in 2014, at the age of 14, he was adjudicated guilty of theft and sentenced to 12 months of court supervision, which was subsequently extended; (2) his court supervision was terminated as unsuccessful in 2016, when he was adjudicated guilty of attempted residential burglary and ordered to serve a 30-month term of probation; (3) that same year, his initial term of probation was terminated as unsuccessful after he was adjudicated guilty of residential burglary and sentenced to 60 months of probation and 15 days in juvenile detention; and (4) in 2017, his second term of probation was terminated as unsuccessful, and he was committed to the Illinois Department of Juvenile Justice after being adjudicated guilty of aggravated robbery. Additionally, in 2018, defendant was charged in Indiana with armed robbery, burglary with a deadly weapon, criminal confinement while armed with a deadly weapon, and battery by means of a deadly weapon. These charges were still pending at the time of the PSI.

¶ 9    The PSI also indicated that defendant was unemployed. Defendant had a daughter who was born while he was in custody and whom he had never met. Defendant was diagnosed with anger problems and ADHD as a child and intermittent explosive disorder (IED) as a juvenile. He was enrolled in special education classes through the sixth grade, and his highest completed education

was grade seven. When interviewed for the PSI, defendant expressed concern regarding his mental health and felt he needed counseling. Defendant started using marijuana at the age of 9, and by age 11, was abusing pills and taking acid. He stated that he used drugs daily and drank alcohol on weekends. Defendant attributed his substance use to problems in his home and family life. He further stated that he received some substance abuse counseling as a juvenile.

¶ 10　The matter proceeded to sentencing in July 2023. In aggravation, the State presented testimony from a correctional officer who testified about defendant's conduct while in jail, and three victim impact statements from the two adult victims and the minor victim's mother. Additionally, the State presented a copy of the social history report filed in defendant's 2017 juvenile case, which was admitted without objection. The State also asked the court to take judicial notice of the four files from defendant's aforementioned juvenile cases.

¶ 11　According to the correctional officer, defendant was the subject of more than 40 incident reports since being arrested and detained in November 2018. Furthermore, defendant had been involved in seven fights. The officer testified that he was an eyewitness to defendant's most recent incident in July 2023, in which defendant resisted and fought with officers attempting to place him in segregation. On cross-examination, the officer acknowledged that, of the other six fights, one had been for "horseplay" and one was provoked by another inmate.

¶ 12　The victims read their impact statements, in which they described how being violently victimized by defendant and his accomplices negatively affected their entire family, including by giving them severe and lasting psychological damage, requiring counseling. One noted that defendant's victims included senior citizens and a six-year-old child. He asked the court to impose the maximum legally-permitted sentence.

¶ 13    In her statement, the mother of the minor victim described how her son's behavior and personality drastically changed since the incident, even four years after the events occurred. She stated that his ability to trust people and his environment eroded. He preferred to be alone than make new friends. He had difficulty sleeping. He still experienced fear that impacted his social, emotional, and physical development. She expressed that her family would never be normal again.

¶ 14    Defendant's social history report showed that a 2017 youth assessment screening advised that he was "a high risk for future criminal activity" and was indifferent to his victims. The screening further indicated that although he recognized that "some problematic behavior [was] controllable," he justified his behavior, frequently failed to take responsibility, and did not feel the need to "live in a law-abiding manner." The social history report noted that defendant's previous sentencing dispositions did "not appear to have had significant effects in preventing further criminal activity." Additionally, while he denied being in a gang, the report indicated that the friends he spent most of his time with were gang members.

¶ 15    The report further stated that defendant lived with his mother, had sporadic contact with his father over the phone and social media, and had never been employed. Prior to quitting school after the seventh grade, defendant was suspended three times in two years and had no interest in school activities. Defendant intended to enroll in GED classes, but that had not occurred. He ran away from home six times and had been kicked out twice. Although he was "usually subject to appropriate consequences for bad behavior" and rewards for good behavior, he often disobeyed his mother.

¶ 16    In mitigation, the defense admitted a letter of support from defendant's mother and a letter of support from an Indiana resident who knew defendant while he lived there. Both letters asked the trial court to show mercy and both indicated that defendant experienced difficulties growing

5

up. The mother's letter explained that she and her mother tried their best to properly raise defendant and that his behavior began to change after he started using drugs. The defense also admitted a memorandum prepared by an investigator with the state's attorney's office, which noted that defendant made statements acknowledging responsibility for the underlying crimes. Next, the defense admitted an excerpt from a July 2013 article published by the National Institute of Health entitled "Maturation of the Adolescent Brain," which noted that "brain development is not complete until near the age of 25 years," particularly because of the rate of development of the prefrontal cortex. Defendant declined to give a statement in allocution.

¶ 17    Noting that the sentencing range for defendant's home invasion and armed robbery convictions, with the firearm add-on applied, was between 21 and 45 years, the State argued for the imposition of discretionary consecutive sentences, totaling a term near "the upper end" of the 90-year maximum. Contending that these crimes fundamentally impacted the community as a whole, the State emphasized the violent nature of the underlying events and how they specifically affected the three victimized families. The State noted that the four offenders hit "[p]eople over the age of 60 with guns" and put a gun in a six-year-old child's mouth. The State argued that none of the statutory factors in mitigation were present but that several of the statutory factors in aggravation were, and that consecutive sentences were necessary to protect the public.

¶ 18    Conceding that defendant was responsible for his criminal conduct and behavior in jail, the defense emphasized that defendant was "raised by the streets" without a strong sense of morals and values, he had only been found guilty of the crimes that were committed at one of the homes, and he acknowledged responsibility for those offenses. Counsel further noted that defendant was tried and convicted on a theory of accountability, that he was 18 years old at the time of the offenses, and that the majority of his jail fights occurred before 2022. Defense counsel concluded

6

that the minimum possible sentence of 21 years, to be served at 85%, would be suitable, but asked the court to impose concurrent sentences totaling "closer to 30 years."

¶ 19  Prior to imposing sentence, the trial court stated that it considered the evidence and arguments presented and the statutory factors in aggravation and mitigation (see 730 ILCS 5/5-5-3.1(a), 5-5-3.2(a) (West 2022)). In mitigation, the court noted defendant's age and his upbringing on the streets. The court also stated that it was "aware of the maturation of the adolescent brain about that discussion."

¶ 20  In aggravation, the court explained that it first considered defendant's criminal history, which in this case was "extensive," with a "fairly lengthy" juvenile record. Next, the court addressed deterrence, stating, "this was a nightmare for the families. I couldn't imagine going through what occurred that night. Not only from a physical standpoint, but from an emotional standpoint. A senior citizen was beaten. A six year old kid had a gun put in his mouth. That causes a lot of concern for the Court." The court concluded that there "certainly is a need for a deterrent in this case," and the community could not tolerate such behavior.

¶ 21  The trial court sentenced defendant to concurrent 39-year terms on his home invasion and armed robbery convictions and a concurrent 5-year term on his conviction for aggravated battery. The court merged the four home invasion counts into a single count for sentencing purposes. Because one of the victims had his hand broken, the court also made a finding of great bodily harm as to one of the home invasion counts and one of the armed robbery counts. When discussing its decision not to impose consecutive sentences, the court opined that although the nature and circumstances of the offense caused great concern, along with the history and character of defendant and his behavior in jail, a sentence of "39 years at 85% for somebody of his age" was

7

"adequate" and "sufficient to protect the public." The court concluded its sentencing with a comment that it was well aware of its inability to return the victims' lives back to normal.

¶ 22   Defense counsel filed a motion to reconsider sentence, arguing that 39 years was excessive. Counsel noted defendant's age of 18 years and 8 months at the time of the offenses, as well as the fact that he would be required to serve his sentence at 85%, which amounted to over 33 years in prison. Counsel further contended that the trial court did not sufficiently consider all factors in sentencing defendant. In denying the motion, the court stated that it was "very familiar with this case," that it considered all the factors in mitigation and aggravation, and that it was aware of defendant's age. However, "given the facts and circumstances of this case along with the other aggravating factors," the court determined that the sentence it had imposed was appropriate.

¶ 23   This timely appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25   Defendant appeals, arguing that his sentence was excessive where the trial court failed to adequately consider his youth and rehabilitative potential as mitigating factors and should not have considered deterrence as a factor in aggravation. For the following reasons, we affirm the judgment of the circuit court.

¶ 26   A trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). This court reviews the trial court's sentencing decisions for an abuse of discretion. *Id.* An abuse of discretion occurs where the sentencing court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 26. The trial court's judgment regarding sentencing is afforded great deference because the court, having observed the defendant and the proceedings, " 'has the

8

opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' " *Alexander*, 239 Ill. 2d at 213 (quoting *People v. Stacey*, 193 Ill. 2d 203, 209 (2000)). Therefore, the reviewing court will not substitute its judgment for that of the sentencing court merely because the former would have weighed these factors differently. *Id.*

¶ 27 A sentence within the statutorily mandated range is presumed to be proper. *People v. Hamilton*, 361 Ill. App. 3d 836, 846 (2005). When a sentence falls within statutory limits, it will not be found to be excessive or an abuse of discretion unless the sentence is " 'greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense.' " *Alexander*, 239 Ill. 2d at 212 (quoting *Stacey*, 193 Ill. 2d at 210); *Etherton*, 2017 IL App (5th) 140427, ¶ 28. Additionally, a sentence that is within the statutory range but ignores the defendant's rehabilitative potential is considered excessive. *People v. Bruce*, 2022 IL App (1st) 210811, ¶ 24.

¶ 28 A proper sentence balances the seriousness of the offense with the objective of restoring a defendant's rehabilitative potential. Ill. Const. 1970, art. I, § 11; *People v. Clemons*, 2012 IL 107821, ¶ 29. The Unified Code of Corrections sets out certain statutory factors in aggravation and mitigation that a trial court must consider when imposing a sentence of imprisonment. 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2022). In fashioning the appropriate sentence, the court must carefully consider all the factors in aggravation and mitigation, and other factors, such as defendant's age, demeanor, habits, credibility, criminal history, social environment, and education as well as the nature and circumstances of the crime and of defendant's conduct in the commission of the crime. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). When such factors have been presented for the trial court's consideration, it is presumed, absent some contrary indication, that the factors have been considered. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). A trial court has wide latitude

9

in sentencing a defendant, as long as it neither ignores relevant mitigating factors nor considers improper factors in aggravation. *Id.* at 157.

¶ 29    In the present matter, a jury convicted defendant of home invasion, armed robbery, and aggravated battery. Home invasion is a Class X felony, with a statutory sentencing range of 6 to 30 years. 720 ILCS 5/19-6(c) (West 2022); 730 ILCS 5/5-4.5-25(a) (West 2022). Additionally, defendant was charged under subsection (a)(3) of the home invasion statute for using or threatening force while armed with a firearm, which requires that "15 years be *** added to the term of imprisonment imposed by the court." 720 ILCS 5/19-6(a)(3), (c) (West 2022). Armed robbery committed while carrying a firearm is also a Class X felony with a 15-year add-on, and thus the same sentencing range applies. *Id.* § 18-2(a)(2), (b). Aggravated battery committed while using "a deadly weapon other than by discharge of a firearm" is a Class 3 felony. *Id.* § 12-3.05(f)(1), (h). It therefore carries a sentencing range of two to five years. 730 ILCS 5/5-4.5-40(a) (West 2022). Finally, because the trial court made a finding of great bodily harm as to the home invasion count and one of the armed robbery counts, defendant is required to serve 85% of his 39-year sentence, which amounts to slightly over 33 years. *Id.* § 3-6-3(a)(2)(iii).

¶ 30    On appeal, defendant does not dispute that his concurrent 39-year and 5-year sentences, at 85%, are within the respective statutory ranges. However, he argues that the sentences are excessive "where adequate consideration of his young age, mental health, and potential for rehabilitation warrant a lesser sentence." Beginning with his mental health and troubled upbringing, defendant acknowledges that the trial court specifically referenced his being "brought up on the streets," but contends that it failed to consider the following: (1) defendant's struggles with a learning disability and ADHD since he was a young child, which led to his dropping out of school after completing the seventh grade at an alternative school; (2) his history of substance use,

starting with marijuana at age 9 and pills and acid at age 11, for which he never received adequate treatment, as well as the fact that he had smoked marijuana and taken a heavy dose of Xanax on the night of the offenses; and (3) his mental illnesses—the aforementioned ADHD, for which he stopped taking Ritalin at age 16, and IED, for which he never received treatment. On the last point, defendant added that three of his four juvenile cases, as well as his attempts to run away from home, occurred only after he stopped being treated for ADHD and was diagnosed with IED. We disagree.

¶ 31    The sentencing hearing transcript demonstrates that the trial court heard and considered evidence regarding defendant's struggles with his education, his mental health, and substance abuse. Defendant's social history report documented that he first received psychiatric services in 2012 and was subsequently placed on medication. In January 2016, he was referred to the Mental Health Juvenile Justice program for his IED, but he did not meet the program's criteria. Defendant subsequently participated in recommended outpatient substance abuse treatment until July 2016, although he missed several appointments. In October 2016, defendant and his mother were encouraged to seek psychiatric services following an altercation, but they failed to do so. In December 2016, he entered inpatient substance abuse treatment, but he was discharged after four days "at staff request *** due to antagonistic behavior."

¶ 32    On appeal, defendant contends that his mother failed to ensure that he received substance abuse and other mental health treatment and enrolled in GED classes. He adds that his ADHD, IED, and substance abuse issues are all amenable to treatment, which speaks to his rehabilitative potential. Furthermore, when defendant was interviewed for the PSI, he expressed concerns regarding his mental health and expressed feeling a need for counseling, which he now argues demonstrates his growth and rehabilitative potential. We disagree.

11

¶ 33    Our review of the record does not support a finding that the trial court improperly weighed defendant's mental health, substance abuse, and life circumstances based on its failure to consider his mother's alleged parenting deficiencies. According to the social history report, despite some conflict with his mother, their relationship was close. The home he lived in was "well[-]managed," and his family provided "ongoing opportunities for growth and consistently provide[d] love, car[e], and support." His family also had a "strong social support network." Despite the support he received, defendant chose to run away from home, associate with gang members, drink and do drugs, not cooperate when substance abuse treatment opportunities were made available to him and engage in behavior that resulted in a lengthy juvenile record. Based on the record before us, the trial court did not abuse its discretion by not giving more weight to his mental health and upbringing. See *People v. Smith*, 214 Ill. App. 3d 327, 340 (1991) ("Where a trial judge considers a defendant's drug addiction, but nonetheless decides that the addiction, if proved, does not entitle the defendant to lenient treatment, it cannot be said that an abuse of discretion has occurred.").

¶ 34    The record also demonstrates that the trial court properly considered defendant's age in its sentencing determination. The court explained that it found defendant's age and upbringing as factors in mitigation, and that it was aware of the late-adolescent brain development information that defense counsel submitted. Additionally, defendant's age influenced the court's decision to impose concurrent, rather than consecutive, sentences. The court determined that while the nature and circumstances of the offenses, as well as defendant's juvenile history and behavior, were concerning, consecutive sentences of 39 years at 85% were adequate for his age and sufficient to protect the public. Finally, in ruling on defendant's motion to reconsider sentence, the court again explained that it considered his age in denying the motion, having found that the facts and circumstances in this matter nevertheless warranted the sentences imposed.

12

¶ 35    Having considered the mitigating factors at sentencing, the trial court balanced them against the aggravating factors of defendant's lengthy juvenile record and the need for deterrence. Regarding the former, the trial court described defendant's juvenile history as "extensive" and "fairly lengthy." This history included adjudications of guilt for the offenses of theft, attempted residential burglary, residential burglary, and aggravated robbery. His two terms of probation had been terminated as unsuccessful. He also had several pending charges in a criminal case in Indiana.

¶ 36    The court also reviewed defendant's 2017 youth assessment screening, which showed that prior sentences of probation, court supervision, and commitment to the Illinois Department of Juvenile Justice were ineffective, as he was deemed "a high risk for future criminal activity." He was further described as indifferent to his victims, frequently failing to take responsibility for and/or justifying his problematic behavior, and not feeling the need to abide by the law. The 2017 social history report determined that defendant's previous juvenile sentences did "not appear to have had significant effects in preventing further criminal activity."

¶ 37    Lastly, the trial court discussed the need for deterrence. It described the underlying events as "a nightmare for the families" involved, which the court "couldn't imagine going through," from both physical and emotional standpoints. The court was concerned by details such as a senior citizen being beaten and a six-year-old having a gun put in his mouth. The court found that there was "certainly *** a need for a deterrent in this case and it's not something the community *** can tolerate[,] behavior like this." Both deterrence and the seriousness of the offense are appropriate statutory factors for the trial court to consider in sentencing, the latter being the most important. See *People v. Walker*, 2021 IL App (4th) 190073, ¶ 75.

¶ 38    Defendant argues that a survey of empirical studies shows that a lengthy sentence is not an effective means of deterrence. Regardless, as discussed above, it is well-established that the need

13

to deter others from committing the same crimes is a valid aggravating factor in sentencing. See 730 ILCS 5/5-5-3.2(a)(7) (West 2022); see also *People v. Smith*, 2022 IL App (4th) 200666, ¶ 30 (consideration of deterrence as aggravating factor was permissible in the case of juvenile offenders); *Walker*, 2021 IL App (4th) 190073, ¶ 75; *People v. Harris*, 231 Ill. App. 3d 876, 881 (1992) ("In the exercise of its discretion a court may logically give reasonable consideration to the need for deterrence as a factor in the imposition of a sentence."). Nothing in the trial court's comments during sentencing suggests that it abused its discretion in weighing the factor of deterrence.

¶ 39    A defendant's rehabilitative potential "is not given greater weight or consideration than the seriousness of the offense" during sentencing. *People v. Rizzo*, 2016 IL 118599, ¶ 39. Neither is the mere fact of a defendant's young age, without any other evidence indicating his potential for rehabilitation, sufficient to support a reduced sentence. See *People v. Suggs*, 2020 IL App (2d) 170632, ¶ 41 (rejecting defendant's argument that his youth supported a shorter sentence, where no other evidence suggested rehabilitative potential, and the defendant was disciplined for numerous offenses at the jail, showed an inability to complete probation services, and had a history of juvenile and adult offenses).

¶ 40    Furthermore, it is proper for a trial court to consider a "defendant's unwillingness to learn from his mistakes or to respect laws enacted for the protection of the public's safety" at sentencing. *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 23. It is clear from the record that this is precisely what the trial court did here by imposing a 39-year sentence. Moreover, defendant notes that this sentence, to be served at 85%, amounts to just over 33 years in prison—a term comparable to his own attorney's recommendation to the court at sentencing, when she asked the court to impose concurrent sentences totaling "closer to 30 years."

14

¶ 41     In this case, the trial court carefully considered the evidence and arguments presented at sentencing, weighed the factors in aggravation and mitigation, and fashioned an appropriate sentence in line with the seriousness of the offenses, defendant's youth and life circumstances, and his rehabilitative potential. We decline to reweigh the evidence and usurp the trial court's discretion to fashion an appropriate sentence. Based on the record before us, we conclude that defendant's sentence was not greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offenses. Accordingly, we find that the imposed sentence was not an abuse of discretion.

¶ 42                                    III. CONCLUSION

¶ 43     For the foregoing reasons, the order of the Macon County circuit court denying defendant's motion to reconsider sentence, as well as its underlying sentencing order, are affirmed.


¶ 44     Affirmed.