2023 IL App (1st) 220636-U

THIRD DIVISION
August 23, 2023

No. 1-22-0636

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 00 CR 15008 |
| | ) | |
| ORVIN AGOSTO, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1   *Held:* Defendant's sentence is not excessive and complies with all relevant statutes, constitutional provisions, and case law. Affirmed.

¶ 2   Following a bench trial, defendant Orvin Agosto was convicted of one count of first-degree murder and one count of attempted first-degree murder for the shooting death of Selustiano Correa. The trial court sentenced defendant to 56 years' imprisonment, comprised of a 25-year sentence for first-degree murder, a then-mandatory 25-year add-on for having discharged a firearm that proximately caused the victim's death, and a 6-year sentence for attempted murder.

¶ 3       Defendant filed a postconviction petition challenging the sentence as unconstitutional under *Miller v. Alabama*, 567 U.S. 460 (2012), in violation of the eighth amendment to the United States Constitution (U.S. Const., amend. VIII). The trial court summarily dismissed the petition at the first stage proceedings. On appeal, this court reversed the dismissal, vacated defendant's sentence, and remanded for resentencing in accordance with *Miller*, *People v. Buffer*, 2019 IL 122327, and section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2018)). Upon resentencing, the court vacated the firearm enhancement and sentenced defendant to 36 years in prison, comprised of a 30-year sentence for first-degree murder and a 6-year sentence for attempted murder.

¶ 4       On appeal, defendant contends that his 36-year sentence is improper for the following reasons: (1) the resentencing hearing did not comply with the statutory mandate because the resentencing court refused to apply the mitigating factors of youth as mandated by section 5-4.5-105(a) of the Code; (2) the 36-year sentence is excessive, considering the evidence in mitigation, and constitutes an abuse of judicial discretion; and (3) the resentencing court's decision to increase defendant's murder sentence from 25 to 30 years was unlawful under section 5-5-4(a) of the Code. We affirm.

¶ 5                                          BACKGROUND

¶ 6       On the night of May 14, 2000, defendant Orvin Agosto, then 16 years old and a Latin Kings gang member, rode into rival LaRaza gang territory and fired two to three shots at 15-year-old Selustiano Correa and 16-year-old Rigoberto Toscano. Correa suffered a gunshot wound to the head and subsequently died on May 18, 2000. Toscano was uninjured. Shortly after the shooting took place, police took defendant into custody. Defendant confessed to the shooting.

¶ 7    Defendant's first trial resulted in a hung jury. Defendant was then tried in a bench trial and was found guilty of the first-degree murder of Correa and the attempted first-degree murder of Toscano.

¶ 8    At defendant's initial 2003 sentencing hearing, a presentence investigation report (PSI) was introduced into evidence that mentioned defendant's "sometimes rough" childhood. The report described defendant's mother as physically abusive and stated that defendant had not seen his biological father, who struggled with substance abuse and had contact with the criminal justice system, since he was eight years old. The report also mentioned that defendant was kicked out of the house by his mother at age 13. Thereafter, defendant joined the Latin Kings gang and began smoking marijuana and drinking regularly. Defendant stated in the report that he left the gang at age 19 because he realized it was "a dead-end street." Additionally, the report stated that defendant received one year of probation for unlawful use of a weapon at age 14.

¶ 9    In aggravation, the State presented a victim impact statement from Correa's mother and argued that a severe sentence was necessary to deter others. The defense did not present additional evidence in mitigation but pointed to defendant's rough childhood and indicated that he was working to obtain a GED, distancing himself from gangs, and becoming religious. In allocution, defendant said that he kept Correa's family in his prayers but denied pulling the trigger.

¶ 10   The trial court sentenced defendant to 56 years' imprisonment. The sentence consisted of 25 years for first-degree murder plus a 25-year then-mandatory enhancement for defendant's personal discharge of a firearm resulting in the victim's death, 6 years for attempted first-degree murder, and 4 years for aggravated discharge, to run concurrently with the attempted murder sentence. During sentencing, the trial court stated that it only imposed the firearm enhancement

because it was required under the statute and that it believed the enhancement would be found unconstitutional.

¶ 11    Defendant appealed, arguing that the firearm enhancement did not apply and that the trial court did not properly admonish him pursuant to Illinois Supreme Court Rule 605(a) (eff. Jan. 1, 2023). This court held that he failed to preserve the enhancement argument but remanded the case for proper Rule 605(a) admonishments. See *People v. Agosto*, No. 1-03-3629 (May 27, 2005) (unpublished order under Supreme Court Rule 23).

¶ 12    On remand, the trial court properly admonished defendant and issued a new mittimus. His aggregate sentence remained 56 years.

¶ 13    On April 30, 2018, defendant filed a *pro se* postconviction petition arguing that his sentence was unconstitutional under *Miller*. The petition was summarily dismissed by the trial court at first stage proceedings as frivolous and patently without merit. Defendant appealed, and on April 30, 2020, this court reversed the summary dismissal, vacated defendant's sentence, and remanded for a new sentencing hearing in compliance with *Buffer* and section 5-4.5-105 of the Code.

¶ 14    A resentencing hearing was held on April 31, 2022. At the hearing, the defense submitted a mitigation report based on interviews conducted with defendant's family members. The report included interviews with his sister, Vanessa, who is one year his senior, his mother, Marjorie, and his mother's sister, Brunilda. The report detailed defendant's upbringing, discussing violent domestic abuse by his father, who was a Latin Kings gang member. Defendant's father left when he was eight years old, but defendant continued to be abused by his mother and her violent boyfriends.

¶ 15    The report also detailed how defendant's mother expelled him and his sister from the house when he was 13 years old. Both defendant and his sister struggled with homelessness, with his sister sleeping in a car for a time. They kept in touch "even when they didn't have cell phones," but both were on their own to find housing. Defendant turned to the Latin Kings for support. He stayed with gang members, many of whom knew his father. Defendant eventually began participating in gang activities, such as selling marijuana and handling firearms.

¶ 16    The mitigation report also listed defendant's ACE score, which measures abuse, neglect, and other adverse childhood experiences. Defendant scored 8 out of 9, putting him in the 99th percentile of abuse victims who take this test. As a result, the report stated that the defendant was at significant risk of disrupted neurodevelopment and social, emotional, and cognitive impairment.

¶ 17    A new PSI was also prepared for the resentencing. This report showed that defendant obtained his GED in prison in 2004 or 2005 but remained affiliated with the Latin Kings until age 33. The defense also presented evidence that while awaiting resentencing in Cook County Jail, defendant participated in the Recipes for Change program (a culinary education program for inmates), was active in the arts program, and painted several murals within the correctional center.

¶ 18    In aggravation, the State introduced defendant's written disciplinary record from the Department of Corrections, which stated that defendant "was one of the main Latin King leaders" while in prison and that he remained a member throughout his time in the Department of Corrections. Defendant had 16 major infractions while incarcerated, six of which were gang-related. Michael Magana, Deputy Commander of Northern Intelligence for the Department of Corrections, testified that defendant was consistently put in segregation, housed in special facilities, and received punishment reserved for the "most dangerous and violent inmates" and the "most influential gang members."

¶ 19     The State also challenged the mitigation report, arguing that the only people interviewed for the report were defendant's family members. Additionally, nothing in the report was corroborated by medical records, school records, or Department of Children & Family Services (DCFS) records. The State also argued that there was little evidence of defendant's rehabilitation efforts, and that they were mainly limited to his time awaiting resentencing in Cook County Jail.

¶ 20     In allocution, defendant asked the resentencing court to consider his prison record in light of the dangerous environment and apologized to Correa's mother. Defendant emphasized that he took advantage of the only educational opportunity provided by the facility by getting his GED. Defendant also noted that he continued to study independently using books that his family sent after he received his GED. Finally, defendant admitted that he remained involved in a gang for most of his time in prison but insisted that he eventually chose to leave the gang because his independent studies changed his "thought process."

¶ 21     After the hearing, defendant's sentence was reduced to 36 years, consisting of 30 years for first-degree murder and 6 years for attempted murder. The resentencing court made the following findings:

> "I have reviewed as I stated the mitigation report, the additional exhibits, the presentence investigation, the prior filings, the prior court rulings. I reviewed the file, considered everything I must consider as far as aggravation and mitigation. I will not layout *[sic]* each factor as I don't find that it's -- that's necessary, but I want to make a record that I have spent some time reviewing everything and now listening to the arguments.
>
> And I find that when I look at the case law, as both sides pointed out, I have to first start -- what I find I need to first start with is the enhancement because the enhancement

is 25 years. It was added on top of the sentence. I find in this case that, now, the enhancement is discretionary as Mr. Orvin was 16 at the time and it is my decision whether or not to add the enhancement.

I find based on everything that the enhancement is not appropriate. I have a problem with the enhancement because it automatically puts a 25-year mark as an addition to another sentence, and I don't find that gives an opportunity for a judge to adjust anything as far as what a judge should as far as mitigation and aggravation. So I don't find that the enhancement is appropriate.

Now, having that said, I'm looking at a minimum of 20, where Judge Sumner gave 25 and six, 20 on the murder and -- 25 on the murder and six on the attempt murder, which Judge Sumner gave. So I find that my next decision is whether or not I could go above that and I find I can because I could also go below that. That's why we have a new sentencing hearing. That's why I hear the additional mitigation that was presented by the defense and the additional aggravation because, now, at a resentencing, we're at a spot where I get to consider what Mr. Agosto has done, how far he's gotten, more mitigation of his background and his family life.

So I do find that I can sentence above what Judge Sumner gave as far as the murder charge and the attempt murder charge as I could also sentence below. So, ultimately, having reviewed everything, Mr. Orvin, I appreciate what you said today because I appreciate that because I find that you did make progress and it's taken you some time to make progress.

A lot of the mitigation presented is your life up to the point where you got arrested, the horrors really of how you grew up. I find that was very similar to what Judge

7

Sumner heard about, you know, as far as your mom. However, I do point out that there is family. Your sister was always close. Your mom's sister was close. You did have family.

I know you had no father and I know you had a mother with mental health issues that was also abusive, which caused you as a teenager, I believe, probably once you were in high school or even before, but I believe based on what I read in the mitigation report that once you were in high school, you were pretty much on your own. But you did have family that you could go to.

However, what drew you was gang life. I find that a result of why you are here before me, well, again, is because of gang life. That's what you chose as a high school student. It happens. But it is your decision.

I understand arguments that are made that, well, because of the circumstances I'm in I really had no choice, I had to do it. I don't find that's true. Ultimately, to choose gang life and to choose to believe what others are telling you that are part of a gang, that is your decision and that's what you made. Because of that decision, you got to a point where at 16, you're shooting a gun and killing somebody, another young individual, where you put yourself in a position going into that gang life with somebody -- you could have gotten shot. So I understand that, but it is a choice that you have made.

And then I look at -- I look at the mitigation and a lot of it is about your upbringing and, you know, what happened up to the age of 16. But since then, since you were in jail, you have had family support, but the aggravation that I find that I heard about in jail is that you continued with the gang life in the jail. You told me yourself that it took

8

you awhile. I think you said you were 28 when you realized how wrong of a choice that is to choose gang life, but you continued to make that choice in the jail. You have recently, I find, come to terms with how wrong, once again, that decision is.

Once again, I understand the arguments, what you said. You did what you had to do. But it's a choice you make to go in with the gang into the jail and then follow through with that in the jail, and that's what you did for a long time.

So taking everything into consideration, Mr. Agosto, as I stated before, I find the appropriate sentence is 30 years on the murder charge and six years on the attempt murder charge for a total of 36 years in the Illinois Department of Corrections."

¶ 22    Defendant made no contemporaneous objection during the resentencing hearing. After the hearing, he filed a motion to reconsider the sentence which was denied. Defendant now appeals.

¶ 23                                JURISDICTION

¶ 24    The resentencing court sentenced defendant Orvin Agosto on April 13, 2022, and denied his motion to reconsider on May 3, 2022. Defendant filed a notice of appeal on the same day. Accordingly, this court has jurisdiction pursuant to Article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. January 1, 2023).

¶ 25                                 ANALYSIS

¶ 26    On appeal, defendant argues that his 36-year sentence is improper for the following reasons: (1) the resentencing hearing did not comply with the statutory mandate because the resentencing court refused to apply the mitigating factors of youth as mandated by section 5-4.5-105(a) of the Code;  (2) the 36-year sentence is excessive, considering the evidence in mitigation, and constitutes an abuse of judicial discretion; and (3) the resentencing court's decision to increase

his murder sentence from 25 to 30 years was unlawful under section 5-5-4(a) of the Code (730 ILCS 5/5-5-4 (West 2022)).

¶ 27    Defendant asks this court to either reduce his 36-year sentence or remand for resentencing before a new judge.

¶ 28                                I. Forfeiture and Plain Error Review

¶ 29    Defendant has forfeited all three claims. "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Because defendant did not object when the circuit court pronounced its findings and sentence, his claims are not properly preserved.

¶ 30    Because the claims were forfeited, we can only review each issue under plain error, a "narrow and limited exception to the general waiver rule." *People v. Herron*, 215 Ill. 2d 167, 177 (2005). Defendant asks this court to review the issues under the plain error doctrine.

¶ 31    "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence." *People v. Herron*, 215 Ill. 2d 167, 186–87 (2005). In the first instance, "the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *Id.* at 187. In the second instance, "the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Id.* Regardless, the defendant "has the burden of persuasion" and "must first show that a clear or

obvious error occurred." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). "If the defendant fails to meet his burden, the procedural default will be honored." *Id.*

¶ 32     The first step of our plain error analysis is to determine whether defendant has shown that any error occurred at all. *People v. Walker*, 232 Ill. 2d 113, 124 (2009).

¶ 33     A. Whether the Youth Mitigation Factors Were Properly Considered and Applied

¶ 34     Defendant first argues that the resentencing court refused to apply the mitigating factors of youth, codified in section 5/5-4.5-105(a) of the Code, as ordered by this court. Whether the resentencing court failed to comply with this court's mandate is a question of law that we review *de novo*. See *People v. Payne*, 2018 IL App (3d) 160105, ¶ 9. "A *de novo* review entails performing the same analysis a trial court would perform." *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 35     *Miller v. Alabama* prohibited mandatory life sentences for juveniles and listed several factors courts must consider when sentencing juveniles to life sentences. *Miller*, 567 U.S. 460. The Illinois legislature later codified these factors in section 5-4.5-105(a), requiring a court to consider the following nine mitigating factors before sentencing a juvenile defendant:

> "(1) the person's age, impetuosity, and level of maturity at the time of the offense, including the ability to consider risks and consequences of behavior, and the presence of cognitive or developmental disability, or both, if any;
>
> (2) whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences;
>
> (3) the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma;
>
> (4) the person's potential for rehabilitation or evidence of rehabilitation, or both;

(5) the circumstances of the offense;

(6) the person's degree of participation and specific role in the offense, including the level of planning by the defendant before the offense;

(7) whether the person was able to meaningfully participate in his or her defense;

(8) the person's prior juvenile or criminal history; and

(9) any other information the court finds relevant and reliable, including an expression of remorse, if appropriate. However, if the person, on advice of counsel chooses not to make a statement, the court shall not consider a lack of an expression of remorse as an aggravating factor." 730 ILCS 5/5-4.5-105(a) (West 2022). See *Buffer*, 2019 IL 122327, ¶ 36 ("This list is taken from and is consistent with *Miller*'s discussion of a juvenile defendant's youth and its attendant characteristics."); see also *Miller*, 567 U.S. at 477-78.

¶ 36 According to defendant, "the core issue" of this case "is not the judge's failure to list the sentencing factors but rather the judge's *categorical rejection* of at least two of the sentencing factors that applied to this case." (Emphasis in original.) Specifically, defendant contends that the resentencing court "categorically rejected" the second and third factors, namely "whether the person was subjected to outside pressure, including peer pressure, familial pressure, or negative influences" and "the person's family, home environment, educational and social background, including any history of parental neglect, physical abuse, or other childhood trauma." 730 ILCS 5/5-4.5-105(a)(2), (3) (West 2022). We do not find this argument persuasive.

¶ 37 "[B]ecause a trial court need not explicitly analyze each relevant factor or articulate the basis for the sentence imposed, when mitigating evidence is presented before the trial court, it is presumed that the court considered that evidence in imposing the defendant's sentence." *People v.*

*Knox*, 2014 IL App (1st) 120349, ¶ 46. See also *People v. Burton*, 184 Ill. 2d 1, 34 (1998) ("We presume that the circuit court considered any mitigating evidence before it, in the absence of some indication to the contrary, other than the sentence itself.").

¶ 38    During sentencing, the resentencing court stated that it "reviewed *** the mitigation report, the additional exhibits, the presentence investigation, the prior filings, the prior court rulings," listened to the arguments, and "considered everything" the court "must consider as far as aggravation and mitigation." No evidence in the record supports the claim that the resentencing court refused to consider these factors. Rather, the resentencing court's statement is sufficient evidence that it weighed the appropriate factors in its sentencing in compliance with the statutory mandate.

¶ 39    Despite the resentencing court's explicit statement to the contrary, defendant claims that the court "openly rejected the idea that" the defendant's childhood, environment, and other outside forces "influenced Orvin's actions." To support this claim, defendant points to the following statement by the resentencing court during sentencing.

> "However, what drew you was gang life. I find that a result of why you are here before me, well, again, is because of gang life. That's what you chose as a high school student. It happens. But it is your decision.
>
> I understand arguments that are made that, well, because of the circumstances I'm in I really had no choice, I had to do it. I don't find that's true. Ultimately, to choose gang life and to choose to believe what others are telling you that are part of a gang, that is your decision and that's what you made. Because of that decision, you got to a point where at 16, you're shooting a gun and killing somebody, another young individual,

where you put yourself in a position going into that gang life with somebody -- you could have gotten shot. So I understand that, but it is a choice that you have made."

¶ 40    Contrary to what defendant asserts in his reply brief, this passage does not prove that the resentencing court believed that "[defendant's] circumstances *** were unconnected to how [defendant] ended up in a gang himself." The resentencing court did not dispute that defendant's "choices" were influenced by his "age and his circumstances" but merely rejected the notion that defendant had no choice at all. This statement is not at all inconsistent with section 5-4.5-105 of the Code, which does not absolve juveniles of accountability but rather mandates that their actions be considered in the context of their youth and its attendant circumstances. Furthermore, the record shows that the resentencing court adequately considered the context of defendant's youth and circumstances, stating that the court "look[ed] at *** [defendant's] upbringing" and weighed everything that "happened up to the age of 16" in mitigation.

¶ 41    However, even if defendant's interpretation of the resentencing court's statement is correct, this statement is not enough to overcome the presumption "that the circuit court considered any mitigating evidence before it," *Burton*, 184 Ill. 2d at 34. See *People v. Bruce*, 2022 IL App (1st) 210811, ¶ 26 ("In determining whether the sentencing court considered any improper factors, this court must consider the entire record, rather than 'a few words or statements' made by the trial court.") (quoting *People v. Ward*, 113 Ill. 2d 516, 526 (1986)).

¶ 42    We presume the resentencing court considered everything in mitigation, including defendant's childhood and rehabilitation. The fact that the resentencing court "did not refuse, as a matter of law, to consider [defendant's] youth," "reviewed the entire [mitigation report] *** and announced several times that [defendant] was young," is sufficient evidence that defendant "received the constitutionally required procedure under *Miller*." *People v. Wilson*, 2023 IL

14

127666, ¶ 44. Since the sentence in question was under 40 years, the question before us is compliance with section 5-4.5-105 of the Code, not compliance with *Miller*. However, as that section codifies *Miller*, we see no reason that what constitutes sufficient procedure under *Miller* is not also sufficient under the statutory requirement. Further, defendant articulates no such distinction.

¶ 43    Therefore, we find no error, and the issue is forfeited.

¶ 44        B. Whether Defendant's Sentence was Excessive Given Mitigating Evidence

¶ 45    Additionally, defendant contends that even if the resentencing hearing complied with the statutory mandate, defendant's sentence was excessive. Defendant concedes that the sentence of 36 years was within the statutory guidelines but argues that it was excessive given "the extensive mitigating evidence presented at [defendant's] sentencing hearing *** and constituted an abuse of discretion." Defendant again asks the court to reduce his sentence or remand for resentencing before a different judge. This argument is similarly unpersuasive.

¶ 46    "The sentence to be imposed in an individual case is left to the discretion of the trial court." *People v. Almo*, 108 Ill. 2d 54, 70 (1985). The sentencing court is better positioned to "make a reasoned judgment based upon firsthand consideration of such factors as 'the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.' " *People v. Streit*, 142 Ill. 2d 13, 19 (1991) (quoting *People v. Perruquet*, 68 Ill.2d 149, 154 (1977)).

¶ 47    Therefore, "[w]here a sentence falls within statutory guidelines, it is presumed to be proper and will be overturned only on an affirmative showing that it departs from the intent of the law or violates constitutional guidelines." *People v. Hamilton*, 361 Ill. App. 3d 836, 846 (2005). Moreover, "[a] reviewing court will not reduce the sentence unless there is an abuse of discretion." *Almo,* 108 Ill. 2d at 70. We can only find that a resentencing court abused its discretion if the

sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

¶ 48    Defendant first argues that his 36-year sentence was excessive, relying, in large part, on his assertion that "the maximum of the sentencing range" was 40 years. The "crux" of defendant's argument is that given the mitigating evidence, his sentence of 36 years was too close to the maximum of 40 years, which constitutes an abuse of discretion. Defendant argues that because the court did not find him to be permanently incorrigible, his sentence could not exceed 40 years under *People v. Holman* 2017 IL 120655, ¶ 46, and *People v. Buffer*, 2019 IL 122327, ¶ 42.

¶ 49    We find this argument unpersuasive because *Holman* was recently overruled by *Wilson*. Under *Wilson*, courts can sentence juveniles to life in prison without making a separate finding of incorrigibility. *Wilson*, 2023 IL 127666, ¶ 42 (citing *Jones v. Mississippi*, 593 U.S. ----, 141 S. Ct. 1307, 1313 (2021) (holding that courts are not required under the 8th Amendment to make a separate finding of incorrigibility before assigning a life sentence to a juvenile)). Therefore, under *Jones* and *Wilson*, there is no constitutional barrier to assigning defendant a life sentence without a finding of incorrigibility.

¶ 50    Consequently, the true sentencing range of the present case was between 20 and 56 years, as the court could have assigned a sentence of up to defendant's original sentence of 56 years. See 730 ILCS 5/5-5-4(a) (West 2022).

¶ 51    In light of this, defendant's 36-year sentence constituted a 20-year reduction, which is well within the sentencing guidelines, unquestionably constitutional under *Miller* and *Jones*, and aligned with the spirit and purpose of section 5-4.5-105 of the Code.

¶ 52    Furthermore, even if the defendant was correct in asserting that his sentence was four years under the maximum, he still has failed to show that the sentence was invalid.

¶ 53    Defendant argues that the resentencing court "misconstrued the contents of the mitigation report to Orvin's detriment." Defendant specifically points to a statement in the resentencing hearing where the resentencing court posited: "There is family. Your sister was always close. Your mom's sister was close. You did have family." Defendant claims this statement is "a bizarre and unreasonable interpretation of the evidence" and therefore demonstrates that the resentencing court disregarded the mitigating evidence. Defendant also posits that the court "[gave defendant's] rehabilitation all but half a thought" by only briefly mentioning the progress defendant made.

¶ 54    First, it is well established that "[t]he trial court is not obligated to reduce a sentence from the maximum allowed simply because mitigating factors are present." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19.

¶ 55    Second, defendant's claim that the court's statement is not supported by the evidence is incorrect. According to the mitigation report, defendant's sister said "Orvin was always smart and 'could figure out how to find [her],' even when they didn't have cell phones." Furthermore, defendant's aunt is mentioned several times in the report.

¶ 56    Moreover, even if defendant's reading of the record is correct, these statements do not demonstrate that the resentencing court disregarded the *Miller* factors as codified. As stated in the previous section, the court is presumed to have considered all of the mitigating evidence before it. *Burton*, 184 Ill. 2d at 34. "[I]n determining whether the sentencing court considered any improper factors, this court must consider the entire record, rather than 'a few words or statements' made by the trial court." *Bruce*, 2022 IL App (1st) 210811, ¶ 26 (quoting *People v. Ward*, 113 Ill. 2d 516, 526 (1986)). In the present case, the record is clear that the resentencing court weighed the proper mitigating and aggravating factors. The court stated that it considered the factors, and it reduced defendant's sentence by 20 years.

¶ 57 Defendant cites to *People v. McKinley*, 2020 IL App (1st) 191907, for the proposition that the sentence imposed must reflect the mitigating evidence presented, and where it is evident that such mitigation was disregarded by the sentencing court, the appellate court should consider that evidence. *Id. McKinley* was not so simple. In *McKinley*, we did speak at length about the defendant's sterling record as an inmate. *Id.* ¶ 80. However, the sentencing court in *McKinley* imposed a 39-year sentence and, "in recognizing that the Illinois Supreme Court's determination that 40 years is the equivalent of a life sentence, stated, 'I don't believe that. I think the defendant was entitled to more time in the penitentiary than even a 40-year sentence.' " *Id.* Further, we noted that "[t]he trial court's comments suggest a predisposition to punish certain types of offenders more harshly." *Id.* We also faulted the sentencing court for improperly weighing relevant factors, namely treating peer pressure as an aggravating factor rather than a mitigating factor, giving improper weight to the need to deter future criminal conduct, and improperly weighing the defendant's age, based on its statement that "defendant was only 16 years old. The gun made him older." *Id* ¶ 87-90.

¶ 58 In the case at bar, no such improper weighing occurred. As we have explained above, even where defendant argues that the resentencing court rejected relevant factors, that is a misinterpretation of the resentencing court's statements. Further, the cases we have cited establish that with the option to impose the firearm enhancement, the resentencing court could have imposed up to a 56-year sentence. Thus, what remains of defendant's proposition is the assertion that, where there is a significant amount of evidence in mitigation and the maximum sentence available to the sentencing court is 56 years, imposition of a 36-year sentence demonstrates that the evidence in mitigation was disregarded. *McKinley* does not support that proposition, and we find it unconvincing.

¶ 59    Upon reviewing the record, we find that the sentence was not at variance with the spirit and purpose of section 5-4.5-105(a), did not violate any constitutional guidelines, and was proportionate. Thus, we find no abuse of discretion and no error. Accordingly, the issue is forfeited.

¶ 60           C. Whether Defendant's Sentence Violates Section 5-5-4 of the Code

¶ 61    Defendant also argues that his 36-year sentence violates section 5-5-4(a), which prohibits the court from increasing a defendant's sentence on remand. However, defendant's argument is entirely without merit.

¶ 62    Section 5-5-4(a) of the Code states that:

> "Where a conviction or sentence has been set aside on direct review or on collateral attack, the court shall not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence less the portion of the prior sentence previously satisfied unless the more severe sentence is based upon conduct on the part of the defendant occurring after the original sentencing." 730 ILCS 5/5-5-4(a) (West 2022).

¶ 63    Whether the resentencing court complied with this statute is a matter of law we review *de novo*. *People v. Moore*, 359 Ill. App. 3d 1090, 1092 (2005).

¶ 64    Initially, the defendant received a 56-year sentence, with 25 years for first-degree murder, 25 years as a mandatory enhancement for personally discharging a firearm, and 6 years for attempted murder. Upon resentencing, the resentencing court reduced the defendant's overall sentence to an aggregate of 36 years. This was accomplished by eliminating the firearm enhancement and increasing the murder sentence to 30 years.

¶ 65    Defendant, attempting to break his sentence into two components, argues that by increasing the first-degree murder term from 25 to 30 years, the resentencing court unlawfully increased his

19

sentence, even though his aggregate sentence decreased. To support his proposition that a resentencing court can violate section 5-5-4 of the Code without increasing the aggregate sentence, defendant cites *People v. Moore*, 177 Ill. 2d 421 (1997), and *People v. Kilpatrick*, 167 Ill. 2d 439 (1995). However, *Moore* and *Kilpatrick* are irrelevant to the present issue as they only apply to consecutive sentences, which are separate sentences under Illinois law. See *Kilpatrick*, 167 Ill. 2d at 446.

¶ 66    In contrast, the present case involves an underlying murder charge and a weapons enhancement, which are not treated as separate sentences when applying section 5-5-4 of the Code. See, e.g., *People v. Barnes*, 364 Ill. App. 3d 888, 897 (2006) ("[W]e note that while the trial court referred to the attempted murder sentence by reference to its component parts, 10 years plus a required 15-year enhancement, neither the language of the statute nor the trial court's ultimate pronouncement of sentence suggests that the penalty imposed for attempted murder consisted of distinct, independent prison terms rather than a single 25–year sentence."); *see also People v. Taylor*, 2015 IL 117267, ¶ 21 (finding "no reason to consider defendant's sentence," which included a 15-year firearm enhancement, "as two separate pieces").

¶ 67    Defendant acknowledges *Barnes* and *Taylor*, but argues that they should not apply because they are cases concerning adult defendants "and do not address the new juvenile sentencing code under which this case falls." Instead, defendant attempts to paint this as a novel issue and proposes that the court make an exception for juvenile sentencing and consider firearm enhancements, which are discretionary under the revised statute, as separate sentences from the underlying murder charge. Compare 730 ILCS 5/5-4.5-105(b) (West 2022) with 730 ILCS 5/5-4.5-20 (West 2022). The only legal justification defendant provides in support of this new standard for juveniles is the

fact that firearm enhancements are mandatory in adult sentencing. *See* 730 ILCS 5/5-8-1(a)(1)(d) (2022).

¶ 68    However, defendant has not cited any Illinois precedent that supports the proposition that the court should treat discretionary and mandatory enhancements differently, nor has any Illinois court considered an enhancement, discretionary or mandatory, separate from the underlying charge.

¶ 69    The Second District addressed this exact question in a similar youth resentencing case, rejecting the notion that an enhancement, even one that is discretionary, can be considered as a separate sentence. *People v. Vatamaniuc*, 2023 IL App (2d) 210665-U. We find *Vatamaniuc* persuasive. The *Vatamaniuc* court also did not find any precedent to support the claim that "a single sentence that includes a statutory enhancement should be treated as an aggregate sentence, with each component analyzed as a discrete sentence, for purposes of evaluating compliance with section 5-5-4(a)." *Id.* ¶ 43. Therefore, like the *Vatamanuic* court, we reject defendant's argument that the resentencing court violated section 5-5-4 of the Code by increasing the murder term.

¶ 70    Moreover, adopting defendant's interpretation as law would go against public policy. Such a restrictive interpretation could disadvantage defendants who stand to gain from judicial discretion that accounts for the unique circumstances of their cases.

¶ 71    Here, the resentencing court found that mitigating factors related to the defendant's youth warranted a significant sentence reduction, but not by more than 20 years. The resentencing court was then able to reduce the defendant's sentence 20 years by eliminating the firearm enhancement and marginally increasing the underlying charge. A flexible and contextual understanding of the sentencing provisions, as exhibited by the resentencing court in this case, better serves justice and allows the courts to tailor sentences according to each case's specific facts and circumstances.

¶ 72    Defendant's interpretation, however, would limit judicial flexibility, potentially discouraging major sentence reductions when the resentencing court does not wish to reduce the sentence by the enhancement's full value. Therefore, we cannot endorse the defendant's restrictive interpretation of section 5-5-4 of the Code, as it is not only inconsistent with the text and intent of the law but also contrary to public policy and the interests of many defendants.

¶ 73    Therefore, because defendant's sentence was reduced from 56 to 36 years, his sentence did not increase, and section 5-5-4 of the Code is not applicable. Thus, we find no error, and the issue has been forfeited.

¶ 74                    II. Plain Error and Ineffective Assistance of Counsel

¶ 75    For the reasons stated above, we find that the resentencing court did not err in sentencing defendant. Because no error occurred, there can be no finding of plain error. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010).

¶ 76    Alternatively, defendant asks the court to find that "trial counsel's failures to challenge the unlawful sentence increase qualified as constitutionally ineffective assistance of counsel." See *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel under *Strickland*, a defendant must first show that counsel committed "errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* The defendant must then "show that the deficient performance prejudiced the defense." *Id.*

¶ 77    In the present case, counsel was not ineffective for failing to challenge the sentence because no error occurred. *People v. Easley*, 192 Ill. 2d 307, 332 (2000) ("Since the actions complained of did not rise to the level of plain error, the failure of defendant's trial counsel to object thereto did not prejudice defendant under *Strickland*.")

¶ 78    Therefore, we must affirm.

¶ 79                                    CONCLUSION

¶ 80    For the foregoing reasons, we find that the resentencing court did not err in resentencing

defendant to 36 years. Thus, we affirm the judgment of the resentencing court.

¶ 81    Affirmed.