2025 IL App (1st) 231109-U
No. 1-23-1109
Order filed September 10, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 01 CR 23489 02 |
| | ) | |
| SAMUEL APPLEWHITE, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Martin and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's 45-year sentence for murder on resentencing over his contentions that (1) the circuit court plainly erred where the sentence is more severe than his original sentence and (2) the sentence is excessive.

¶ 2    In 2003, defendant Samuel Applewhite pled guilty to first degree murder for an offense he committed at age 17 and was sentenced to 45 years in prison, which included a 25-year enhancement for personally discharging a firearm that proximately caused death. In 2020, his sentence was vacated as an unconstitutional *de facto* life sentence under *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. *People v. Applewhite*, 2020 IL App (1st) 142330-B. On

resentencing, the court declined to impose the firearm enhancement but sentenced defendant to 45 years in prison for murder. He appeals, arguing that (1) the court plainly erred by increasing his "base sentence," and (2) the sentence is excessive. For the following reasons, we affirm.

¶ 3    Defendant was charged with, *inter alia*, first degree murder for shooting and killing Marshall Young. On September 25, 2003, defendant entered a negotiated guilty plea to first degree murder in exchange for a sentence of 45 years in prison, including a 25-year enhancement pursuant to a statute that mandated adding 25 years to natural life for personally discharging a firearm that proximately caused death (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2002)).

¶ 4    The State's factual basis provided that, on August 19, 2001, defendant was present as Young and others played dice. Defendant and a co-offender, Marcus Merrell, left the area and told a third co-offender, Steven Austin, that they needed a firearm to rob someone in the dice game. Defendant took a handgun from Austin. Defendant and Merrell donned masks, returned to the dice game, and approached Young. Defendant shot at Young multiple times, striking him in the chest, then fired towards an occupied vehicle. Merrell grabbed money from Young, and they fled. Young died of a gunshot wound to the chest.

¶ 5    On the same day, defendant also pled guilty in a separate case to aggravated battery with a firearm for shooting Lamar Smith (the Smith case) in exchange for a concurrent sentence of 12 years in prison. The State's factual basis provided that, on July 11, 2001, Smith was playing dice. Defendant approached and told Smith to give him money or he would shoot Smith. Smith threw money on the ground, and defendant retrieved it, shot Smith in the chest, and fled.

¶ 6    Defendant swore the factual bases were true. The court accepted his pleas and, pursuant to the agreements, imposed 45 years in prison in the instant case and 12 years in prison in the Smith case, to be served concurrently. Defendant did not move to withdraw his pleas or appeal.

¶ 7    On July 13, 2011, defendant filed *pro se* a petition for relief from judgment in both cases, which he amended to allege that his plea agreement and sentences were void as consecutive sentences were required. The State conceded the sentences were void. To remedy the error, the court allowed the State to dismiss the aggravated battery charge in the Smith case, vacated defendant's conviction in the Smith case, and denied his petition. We affirmed on appeal, allowing counsel to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Applewhite*, No. 1-13-1549 (2014) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 8    On May 23, 2014, defendant filed *pro se* a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)). He claimed that, under *Miller*, the mandatory firearm enhancement was unconstitutional as applied to him under the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), as he was 17 years old on the date of his offense. He requested the court vacate the enhancement, leaving a 20-year sentence.

¶ 9    The circuit court summarily dismissed defendant's petition, and we affirmed. *People v. Applewhite*, 2016 IL App (1st) 142330. Our supreme court then issued a supervisory order directing us to vacate our judgment and reconsider in light of *People v. Buffer*, 2019 IL 122327. *People v. Applewhite*, No. 121901 (Ill. Mar. 25, 2020) (supervisory order). Thereafter, we reversed the dismissal of defendant's postconviction petition, finding his 45-year sentence was an unconstitutional *de facto* life sentence, vacated his sentence, and remanded for a resentencing hearing where the circuit court could consider his youth and its attendant characteristics. *Applewhite*, 2020 IL App (1st) 142330-B.

¶ 10    For defendant's resentencing, the State submitted the transcript of defendant's plea hearing; a handwritten statement he gave to an assistant state's attorney and a detective on August 30, 2001; his Illinois Department of Corrections (IDOC) disciplinary records; and a victim impact statement from Young's father.

¶ 11    Defendant's handwritten statement largely comports with the factual basis from his plea hearing.

¶ 12    His IDOC records reflect 12 incidents resulting in disciplinary infractions, 9 classified as major, including an assault and a planned assault in 2005, and 3 instances of intimidation or threats during 2017 and 2018. Additionally, on October 12, 2018, a letter defendant wrote to two wardens was intercepted and stated: "Dear Wardens, I pray I catch you b*** a*** wardens while I'm down here. I will beat the living s*** out of you b***. Warden Love I hate you the most because you're a [*sic*] uncle Tom I will break your face b***."

¶ 13    In his statement, Young's father requested a maximum sentence. He wrote that defendant had been old enough to know that his actions (shooting a gun) could kill Young.

¶ 14    The defense submitted a mitigation report prepared by Helen Skinner, an attorney and social worker; 17 certificates defendant earned in culinary classes from April 7, 2023, to April 12, 2023; letters from defendant's family; and a letter from defendant.

¶ 15    In the mitigation report, Skinner wrote that she reviewed defendant's records from arrests, schools, prison, and hospitals; interviewed him three times; and interviewed several family members and friends. According to the mitigation report, defendant was born on September 7, 1983. His father was an alcoholic and drug user, actively involved with the Gangster Disciples, sold drugs, and beat defendant's mother. Defendant's mother was also an alcoholic and would beat him with objects, leaving welts and scars. Defendant's parents permanently separated when

defendant was about seven years old. Defendant's mother then began a relationship with a drug addict, with whom she had two children. Defendant and his older sister were the "de facto parents" of the younger children.

¶ 16    Defendant learned how to fight because of his environment. He was bullied and chased home from school every day. Defendant saw people shot and stabbed, and witnessed a seven-year-old boy fall out a window and die after being dangled by his ankle. Defendant was robbed at gunpoint when he was 12 and 13 years old, and was beaten and hospitalized during the second incident. Defendant had a learning disability and required special education services. He attended seven schools by eighth grade. He was expelled from his second high school for fighting and dropped out of his next high school after one day due to a "gang war."

¶ 17    Defendant's older cousin was in the Gangster Disciples. His cousin and his cousin's friends would pay defendant to determine how many people were in a given area before they robbed the targeted group. Defendant joined the Gangster Disciples in high school for protection from rival gang members. When defendant was 15 years old, he was arrested for possessing crack cocaine. A probation officer wrote that defendant was a "follower"–who used marijuana and drugs "to please" others.

¶ 18    When defendant was 16 years old, his girlfriend became pregnant with twins; she miscarried one and the other was stillborn. Around this time, defendant was charged with possessing a firearm and incarcerated for about one year. Upon release, he briefly worked at a restaurant but he wanted more money for his girlfriend who was pregnant, again, and his mother who asked him for money. To get more cash, he committed robberies. Defendant would rob drug dealers and gang members but not women or "normal civilians." His son was born in February 2002, after defendant was incarcerated for the instant offense.

¶ 19    In 2005, defendant and his cell mate fought often and the guards did not seem to care. One fight resulted in defendant's 2005 ticket for assault. He was only transferred to another cell after he was found with a homemade noose around his neck in February 2006. Defendant was diagnosed with anxiety, depression, schizoaffective disorder, "Cluster B Personality Disorder," sleep disorder, PTSD, gender dysphoria, and bipolar disorder, and struggled with his sexual and gender identities. He took GED classes, although his sentence was too long for him to be permitted to take the exam. He also worked and earned certificates, needing only one more class for a "chef license." Defendant learned about the law, wrote his own postconviction petition, and became a "jailhouse lawyer." He spoke with his son every day and tried to lecture him about avoiding street life. Since being remanded to the Cook County jail in 2020, after his original sentence was vacated, he has had no behavioral issues.

¶ 20    The mitigation report also summarized defendant's disciplinary infractions. Skinner wrote that research showed the first years of confinement for those with long sentences are often marked by rule violations as the prisoner is "tested" by more hardened inmates. At one point, defendant entered protective custody after learning there was a "bounty" to kill him from a rival gang. Entering protective custody "meant that he would be done with the Gangster Disciples," as most inmates who entered protective custody were "snitches" or gay. A mental health provider indicated that defendant's mental health issues may have contributed to one 2017 ticket for, *inter alia*, intimidation or threats.

¶ 21    In their letters, four of defendant's siblings indicated their bonds with defendant suffered due to his imprisonment and requested his release so the family could strengthen their relationships. Defendant wrote in his letter that, if released, he planned to live in Milwaukee with his fiancée. He would work as a barber or operate a food truck, and he and his son planned to build

and rent "tiny homes" as affordable housing. Until he could do those things, he would work "any job to put food on the table and build up [his] credit if possible."

¶ 22    For purposes of the resentencing, the court ordered a new presentence investigative report (PSI). According to the PSI, defendant reported that he was a member of the Gangster Disciples from 1994 to 2013 and before leaving the gang he had been a "Regent" with "rank and a role." He began drinking alcohol daily at age 13 and smoking marijuana daily at age 12. He was "ashamed of [his] youth," and remorseful for his crime. In 1999, he was adjudicated delinquent for possessing a controlled substance and sentenced to probation, which was terminated unsatisfactorily. In 2000, he was convicted of aggravated unlawful use of a weapon and sentenced to one year in prison. He reported earning about 30 certificates since being remanded to the Cook County jail.

¶ 23    On June 6, 2023, the court held a resentencing hearing. The State argued the court should consider in aggravation defendant's history of delinquency, his criminal history, and the need for deterrence. The State noted that defendant could be considered for parole after serving 20 years of his sentence.

¶ 24    Defense counsel argued that defendant took responsibility for his actions by pleading guilty and was not claiming innocence. The mitigation report showed that defendant had changed. His disciplinary record was "[r]elatively" minor, and he had substantial mental health issues. Defendant's upbringing had prevented him from fully understanding the consequences of his actions. His fiancée, mother, sister, brother, two stepbrothers, sister-in-law, nephew, two nieces, and friend were present in support. Counsel requested that the court decline to apply the firearm enhancement, which the court now had discretion to do (see 730 ILCS 5/5-4.5-105(b) (West 2022)). Counsel noted that, when defendant pled guilty, the State had offered him 20 years in

prison for first degree murder and he accepted, but recognized the court "can go higher." Counsel argued a sentence less than 40 years in prison was appropriate.

¶ 25 In allocution, defendant stated: "I'm just remorseful for everything that happened. I can't stop what I did. If I could I would. I'm just sorry, man. It should have never happened. That's all I can say."

¶ 26 The court stated it had "carefully" reviewed the mitigation report, and would consider the report, the PSI, and the other exhibits. It had listened to the arguments and defendant's allocution. It had reviewed the statutory factors in aggravation and mitigation, including the juvenile sentencing factors from *Miller* codified in section 5-4.5-105(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-105(a) (West 2022)), read the mandate remanding the cause for findings regarding defendant's history and character, and was mindful that a sentence must meet the objective of restoring a defendant to useful citizenship.

¶ 27 Regarding the juvenile offender factors, the court found that defendant had been immature from his "chaotic upbringing." He experienced gang influence, peer pressure, and familial pressure, but the instant crime was not "forced upon him" and showed "a level of free will." Defendant suffered childhood trauma from a home environment that included drug use, instability, and abuse. As to his rehabilitative potential, he had "significant problems" in school but, while incarcerated, he earned certificates in cooking and was "close to being certified as a chef." However, the court disagreed that defendant's disciplinary history while incarcerated was "minor or non-violent," and found it "more than *de minimis*." The court found some incidents "rather troubling," including his intercepted letter threatening to beat the wardens. Nevertheless, defendant's "significant mental health issues *** would be stressful and would probably explain these behaviors."

¶ 28    The court further noted that defendant was "the central figure" in Young's death, which resulted from defendant's "intentional act." Defendant meaningfully participated in his defense, entered a plea, and acknowledged his culpability. He had "significant" criminal history when including the aggravated battery in the Smith case. Other information that the court found relevant was defendant's history of gang involvement and the number of people present for defendant, which "[did] speak well" of him.

¶ 29    As to the "standard" aggravating and mitigating factors, the court explained it had already considered defendant's criminal and juvenile delinquency history under the juvenile sentencing factors. The court found applicable the need for deterrence, stating that "this crime is something that happens and happens and happens again on a generational level as this is something that happened over 20 years ago, and it keeps happening in the streets of our city time and time again." However, the court believed that factor was also "intertwined in the *Miller* principles." The court found that no statutory mitigating factors applied but was "mindful of the ultimate mitigator," that defendant was under the age of 18. The court also considered whether defendant's character and attitude rendered him unlikely to commit another crime, but did not think that factor applied. The court stated that it had applied every *Miller* factor plus non-statutory factors in mitigation.

¶ 30    The court declined to impose the now-discretionary firearm enhancement. It noted that defendant would be eligible for parole as he had already served 20 years of his sentence, and imposed a sentence of 45 years in prison. The court denied his motion to reconsider the sentence.

¶ 31    On appeal, defendant argues that the resentencing court improperly increased his sentence from his original sentence. Defendant acknowledges that he has forfeited this argument by failing to raise it below, but requests we review it for plain error or find that his counsel provided ineffective assistance by failing to preserve the issue.

¶ 32    The plain error doctrine allows this court to review unpreserved sentencing issues when a clear or obvious error occurred and (1) "the evidence at sentencing was closely balanced" or (2) "the error was so egregious that it denied the defendant a fair sentencing hearing." *People v. Hussain*, 2024 IL App (1st) 230471, ¶ 24. The first question is whether a clear or obvious error occurred, without which there is no plain error. *People v. Pacheco*, 2023 IL 127535, ¶¶ 55, 61. Likewise, counsel is not ineffective for failing to object where there has been no error. *People v. Castejon*, 2025 IL App (1st) 221918, ¶ 55. We find no error here.

¶ 33    Section 5-5-4(a) of the Code provides that, when a sentence has been set aside, "the court shall not impose a new sentence *** which is more severe than the prior sentence *** unless the more severe sentence is based upon conduct on the part of the defendant occurring after the original sentencing." 730 ILCS 5/5-5-4(a) (West 2022). Defendant claims the court violated section 5-5-4(a), an issue we review *de novo*. *People v. Moore*, 359 Ill. App. 3d 1090,1092 (2005).

¶ 34    In making this claim, defendant contends that he originally received a "base sentence" of 20 years for murder, plus a 25-year firearm enhancement. He argues that, although the resentencing court did not apply the firearm enhancement, it impermissibly increased his "base sentence" to 45 years, and we should reduce his sentence to the minimum 20 years in prison that had been originally imposed. However, defendant did not originally receive a "base sentence" for murder separate from the firearm enhancement, but one 45-year sentence that included the firearm enhancement. See *People v. Taylor*, 2015 IL 117267, ¶ 21 (declining to consider a 9-year prison term and a mandatory 15-year enhancement as "two separate pieces"); *People v. Barnes*, 364 Ill. App. 3d 888, 896-97 (2006) (10 years in prison for the underlying offense and a 15-year firearm enhancement were not "distinct, independent prison terms rather than a single 25-year sentence").

¶ 35    Defendant disagrees, relying on *People v. Kilpatrick*, 167 Ill. 2d 439 (1995). However, that case involved consecutive sentences for different offenses, which, unlike enhancements, are treated as separate sentences. See *id.* at 446 ("[C]onsecutive sentences are not treated as a single sentence."); *People v. Cole*, 2016 IL App (1st) 141664, ¶ 43 (noting a "longstanding rule that consecutive sentences constitute separate sentences for each crime of which a defendant has been convicted").

¶ 36    Defendant acknowledges that this court has rejected this same argument, albeit in unpublished decisions. See, *e.g.*, *People v. Agosto*, 2023 IL App (1st) 220636-U, ¶¶ 65-69 (citing *Taylor* and *Barnes* and disagreeing that a term of years imposed as a sentencing enhancement was distinct from a base sentence for the underlying offense); see also Ill. S. Ct. R. 23(b), (e)(1) (eff. June 3, 2025) (nonprecedential orders entered under Supreme Court Rule 23(b) may be cited as persuasive authority). He asserts those cases are not controlling and fail to articulate "a principled reason for treating the sentencing components of a single offense differently" than consecutive sentences for different offenses. Defendant further contends that *Taylor* and *Barnes* are distinguishable because the defendants in those cases were adults and the enhancements were mandatory, whereas, here, the enhancement was discretionary on resentencing as defendant was a juvenile.

¶ 37    We rejected the latter argument in *Agosto*, 2023 IL App (1st) 220636-U, ¶ 67. We agree with the reasoning in *Agosto* and the other cases and decline to deviate from them here. See *People v. Garza*, 2025 IL App (1st) 231600-U, ¶ 52 (following *Agosto* and rejecting "invitation to treat an underlying murder charge and a weapons enhancement as separate sentences"); *People v. Gomez*, 2023 IL App (1st) 220810-U, ¶ 42 (considering a sentence comprised of a discretionary term and a mandatory enhancement as a whole, not different parts).

¶ 38    Defendant further notes that his prior sentence was the minimum possible given the 20-to-60-year range for murder and the then-mandatory enhancement of at least 25 years. He asserts his new sentence is more severe because the minimum sentence for first degree murder at resentencing was 20 years in prison, given the enhancement had become discretionary, and he received a sentence more than double that length. However, we decline to find that defendant's sentence is more severe than his prior sentence where the sentences are the same length. See *People v. Vatamaniuc*, 2023 IL App (2d) 210665-U, ¶ 46 (finding a sentence of the same length as the prior sentence, but without a discretionary enhancement that had been previously applied, was not more severe than the original sentence).

¶ 39    In sum, defendant's original sentence was 45 years in prison, and the resentencing court also sentenced him to 45 years in prison. "[N]othing in the Code mandates a lower sentence on remand." *People v. Raya*, 267 Ill. App. 3d 705, 709 (1994). For the reasons stated, the court did not violate section 5-5-4(a) by imposing a more severe sentence. As the court did not err, it did not commit plain error, and defendant's counsel did not provide ineffective assistance by failing to argue below that the court erred by imposing a more severe sentence. *Pacheco*, 2023 IL 127535, ¶ 61; *Castejon*, 2025 IL App (1st) 221918, ¶ 55.

¶ 40    Next, defendant argues his sentence is excessive, and requests we reduce it or remand for resentencing.

¶ 41    The Illinois Constitution requires that sentences "be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. We give the sentencing court deference as that court is better positioned to consider the relevant sentencing factors. *People v. Clark*, 2024 IL 127838, ¶ 76. We will only disturb a sentence where the trial court abused its discretion, which occurs when the

sentence greatly varies with the purpose and spirit of the law or is manifestly disproportionate to the nature of the offense. *People v. Guerrero*, 2020 IL App (1st) 172156, ¶ 52. A sentence within the permitted statutory range is presumed proper. *Id.*

¶ 42 We will also find an abuse of discretion where the sentence "does not reflect an adequate consideration" of mitigating factors. *People v. Woodson*, 2024 IL App (1st) 221172, ¶ 89. However, where a court has considered the relevant mitigating factors, we may not substitute our judgment merely because we may have weighed them differently. *Clark*, 2024 IL 127838, ¶ 76. We also presume that the court properly considered all evidence of mitigating factors and the defendant's rehabilitative potential, unless the defendant affirmatively shows the contrary. *Hussain*, 2024 IL App (1st) 230471, ¶ 44. The existence of mitigating evidence does not require a minimum sentence. *Id.* ¶ 47.

¶ 43 When sentencing a defendant who was under age 18 at the time of the offense, section 5-4.5-105(a) of the Code also requires the court to consider the following factors in mitigation: (1) the person's age, impetuosity, level of maturity, and ability to consider consequences when he committed the offense, including any cognitive or developmental disabilities; (2) whether he was subjected to peer pressure, familial pressure, or negative influences; (3) his family, home, educational, and social backgrounds, including any parental neglect, abuse, or other childhood trauma; (4) his potential for, or evidence of, rehabilitation; (5) the circumstances of the offense; (6) his degree of participation and specific role in the offense, including his level of planning before the offense; (7) whether he could meaningfully participate in his defense; (8) his prior juvenile or criminal history; and (9) any other information the court finds relevant and reliable, including an expression of remorse. 730 ILCS 5/5-4.5-105(a) (West 2022).

¶ 44 Defendant was convicted of first degree murder, which carries a sentencing range of 20 to 60 years in prison. 730 ILCS 5/5-4.5-20(a) (West 2022). At resentencing, the court exercised its discretion and declined to impose a 25-year-or-longer sentencing enhancement for personally discharging the firearm that proximately caused Young's death. 730 ILCS 5/5-4.5-105(b), 5-8-1(a)(1)(d)(iii) (West 2022). Defendant was resentenced to 45 years in prison, within the range for first degree murder. We therefore presume his sentence is proper unless defendant affirmatively demonstrates otherwise. See *Guerrero*, 2020 IL App (1st) 172156, ¶ 52 (reviewing court presumes within-range sentence is proper).

¶ 45 To make that showing, defendant claims that the resentencing court failed to meaningfully implement the juvenile sentencing factors in section 5-4.5-105(a) and abused its discretion in imposing the 45-year sentence. Specifically, he argues the court inadequately considered the first four factors by failing to mention that he (1) repeatedly witnessed and suffered violence as a child, which prompted him to join a gang and "followed him to prison"; (2) had only negative role models; (3) had not been disciplined for fighting in prison since 2005; (4) left his gang; (5) took GED classes, worked, learned about the law, and assisted other inmates; (6) was well-behaved since being remanded to the county jail; and (7) demonstrated self-awareness and remorse. He asserts that he accepted responsibility by pleading guilty, and his sentence is a *de facto* life term as it exceeds 40 years. See *Buffer*, 2019 IL 122327, ¶ 40 (a sentence exceeding 40 years in prison for a juvenile offender is a *de facto* life term).

¶ 46 Initially, defendant did not receive a *de facto* life sentence. As he was younger than 21 years old at the time of his offense, his new sentence made him eligible for parole review after serving 20 years of his sentence, which he has already completed. See 730 ILCS 5/5-4.5-115(b) (West 2022) (if sentenced after June 1, 2019, a person convicted of first degree murder who was

younger than 21 years old at the time of the offense is eligible for parole review after serving 20 years of his sentence). Although defendant argues that the parole review scheme in Illinois does not provide a meaningful opportunity for release, our supreme court recently disagreed and held that a sentence exceeding 40 years, where the defendant is eligible for parole, is not a *de facto* life sentence. *People v. Spencer*, 2025 IL 130015, ¶¶ 35-40.

¶ 47    Additionally, all the mitigating information that defendant cites was included in the mitigation report defense counsel submitted, which the court stated it had "carefully" considered. The court also expressly analyzed each factor from section 5-4.5-105(a). Defendant provides no affirmative evidence that the court failed to consider the mitigating evidence . See *Hussain*, 2024 IL App (1st) 230471, ¶¶ 44, 47 (reviewing court presumes the court considered the relevant mitigating factors, and a "harsh sentence, standing alone, does not show that the court ignored mitigating evidence" (internal quotation marks omitted)). Defendant's arguments are, essentially, a request that we reweigh the factors in aggravation and mitigation, which we cannot do. *Clark*, 2024 IL 127838, ¶ 76.

¶ 48    Further, as the court noted, defendant's killing of Young was not forced by peer pressure but resulted from defendant's "intentional act." The record shows that defendant planned the offense by leaving the dice game, obtaining a firearm, donning a mask, returning, and shooting at Young and an occupied vehicle, threatening serious harm to the vehicle's occupants. See 730 ILCS 5/5-5-3.2(a)(1) (West 2022) (court may consider in aggravation that the defendant's conduct threatened serious harm). The circumstances of the offense and defendant's level of planning are therefore aggravating, and the court could weigh the seriousness of the offense more heavily than the evidence of defendant's rehabilitation. See *People v. Wyma*, 2020 IL App (1st) 170786, ¶ 99 (seriousness of the offense is the most important factor, even when sentencing juvenile offenders).

¶ 49    The court could also weigh defendant's criminal history and disciplinary record, which both included violence and threats, as an aggravating factor. The court noted that defendant had "significant" criminal history when considering the Smith case, and his IDOC records included "rather troubling" behavior. The IDOC records show that the letter in which he threatened to beat the wardens was intercepted on October 12, 2018, when he was 35 years old, weakening his argument that he is unlikely to reoffend because his prior bad behavior was due to his youth and its attendant characteristics. Despite these aggravating factors, defendant received a sentence near the midpoint of the statutory range. See 730 ILCS 5/5-4.5-20(a) (West 2022) (sentence for first degree murder must be between 20 and 60 years in prison). That defendant is eligible for parole review also mitigates against finding that his sentence is excessive. *People v. Anderson*, 2024 IL App (1st) 220864, ¶ 28.

¶ 50    Defendant additionally challenges the circuit court's belief that the need for deterrence was an applicable aggravating factor. As defendant notes, "deterrence is diminished in juvenile sentencing because juveniles' recklessness, immaturity, and impetuosity make them less likely to consider possible punishment." *People v. Morris*, 2017 IL App (1st) 141117, ¶ 33. However, although the court here found the need for deterrence applicable, it also stated that the need for deterrence was "intertwined in the *Miller* principles" that the court was considering. It was not necessarily improper for the court to mention deterrence as an aggravating factor. See *People v. Smith*, 2022 IL App (4th) 200666, ¶¶ 28-30 (the Supreme Court has not precluded sentencing courts from considering deterrence as an aggravating factor when sentencing juvenile offenders). Moreover, given the court's much more lengthy analysis of the juvenile sentencing factors, it is unclear whether the court gave deterrence much weight, if any, in fashioning defendant's sentence. *Cf. People v. Haynie*, 2020 IL App (1st) 172511, ¶¶ 34-35 (finding sentencing court's "focus on

deterrence" in sentencing a juvenile improper); *People v. McKinley*, 2020 IL App (1st) 191907, ¶ 89 (finding court gave "improper weight" to deterrence when sentencing a juvenile where it stated it had considered "all of those new factors" for juvenile sentencing "but the sentence must deter future criminal conduct").

¶ 51 Last, defendant compares his case to *McKinley*, 2020 IL App (1st) 191907, and *Woodson*, 2024 IL App (1st) 221172, where, following resentencings pursuant to *Miller* and its progeny, we reduced the defendants' sentences for failing to adequately account for the juvenile sentencing factors. Those cases are distinguishable where each defendant proved to be a "model inmate," whereas the court here found defendant's disciplinary record was more than *de minimis* and included a violent threat when he was 35 years old. See *McKinley*, 2020 IL App (1st) 191907, ¶ 75 (stating the defendant was "a model inmate," who, *inter alia*, had zero tickets throughout his 17-year imprisonment); *Woodson*, 2024 IL App (1st) 221172, ¶ 93 (the defendant "was a model inmate" who, *inter alia*, received four tickets for minor infractions during his 16 years in prison). The sentencing courts in those cases also improperly weighed or disregarded some of the juvenile sentencing factors, which the court here did not do. *McKinley*, 2020 IL App (1st) 191907, ¶¶ 87-90; *Woodson*, 2024 IL App (1st) 221172, ¶¶ 91-98. Most significantly, this argument is another request for us to reweigh the sentencing factors, which we may not do.

¶ 52 In sum, defendant has not shown the court abused its discretion by imposing an excessive sentence. We therefore affirm his sentence.

¶ 53 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 54 Affirmed.